[No. 298. January Term, 1891.]

## GEORGE LYNCH ET AL., APPELLEES, v. G. W. GRAYSON ET AL., APPELLANTS.

DAMAGES—WAIVER OF JURY—FINDING—APPEAL.—In this territory, the finding of the court, when a trial by jury is waived, is, in effect, the same as the verdict of a jury; and only such rulings of the court, made during the progress of the trial, are reviewable on appeal, as are duly presented by the bill of exceptions.

ID.—ADMISSIBILITY OF EXPERT TESTIMONY—DISCRETIONARY POWER OF COURT.—Where expert testimony is offered, it is discretionary with the trial court whether it shall be received or excluded, and the appellate court will not reverse its rulings unless manifestly erroneous.

ID.—TEXAS FEVER—TRESPASS ON CASE—EVIDENCE.—In an action of trespass on the case for damages for transporting cattle infected with "Texas fever," and communicating the disease to plaintiffs' cattle, where expert witnesses for plaintiffs testified that cattle from an infected district may carry a contagion with them, and disseminate and communicate it, without being visibly affected by it, and one of the defendants testified that before he brought his cattle from Texas he had heard of the disease, but never believed in it, and another

.defendant testified that he had heard of the disease, and that plaintiffs protested against the unloading of the cattle lest their cattle might contract some disease from them, defendants must be held to have been fully informed and warned of the danger of communicating the disease, and it devolved upon them to take every precaution against it.

ID.—23 U. S. STAT., SEC. 6, 1884.—To render defendants liable under the act of congress of May 29, 1884, prohibiting the transportation from one state or territory to another of live stock infected with a contagion, it was not necessary for plaintiffs to show defendants had actual knowledge that their cattle, when shipped, were carrying disease germs with them; it was sufficient if the locality from which they were shipped was known to have been infected. Nor is it material under this act where the contagion was communicated, whether on the public road, on the public commons, or on the lands of the plaintiffs.

ID.—TRIAL BY COURT—ADMISSION OF INCOMPETENT EVIDENCE—PRESUMPTION.—On the trial of a cause by the court, the rule is that the admission of incompetent evidence is no cause for reversal, if it could not have prejudiced the other party; and where it does not appear that the court relied on such evidence, the presumption is, if any was admitted, it was not considered by the court in its finding.

APPEAL, from a judgment in favor of plaintiffs, from the Third Judicial District Court, Dona Ana County. Judgment affirmed.

CATRON, THORNTON & CLANCY and ELLIOTT, PICKETT & ELLIOTT for appellants.

The books admitted in evidence were incompetent. Rev. Stat. U. S., secs. 906, 882.

A receipt of the receiver of the land office neither gives right to the possession of lands nor to a patent. It is not final, and is incompetent and insufficient to prove such facts. McFarland v. Culbertson, 2 Nev. 284.

The disease must be proved as laid. Lindsay v. Davis, 30 Mo. 406.

In laying the foundation for expert testimony it was necessary to have first shown by the witness that he was possessed of such knowledge, experience, and

skill in the diagnosis and treatment of diseases of cattle, and particularly the so-called "Texas cattle fever," as would have entitled his opinion to pass for scientific truth. Lawson's Expt. Ev.; Carr v. Northern Liberties, 35 Pa. St. 324.

An expert can not give an opinion on a hypothetical statement which is not supported by the facts in evidence. Lawson's Expt. Ev. 152; Hurst v. Chicago R. R. Co., 49 Iowa, 76; Vandusen v. Newcomer, 40 Mich. 90; Grand Rapids R. R. Co. v. Huntley, 38 Mich. 537; Hitchcock v. Burgett, 38 Mich. 506, 507, 508. See, also, Lawson's Expt. Ev. 142, 149, 150.

The facts are assumed for the purpose of the question, and for no other purpose. Fieler v. N. Y. R. R. Co., 49 N. Y. 42; Lawson's Expt. Ev. 153.

If the facts stated in the hypothetical case are not proven, the opinion goes for nothing. Lawson's Expt. Ev. 153; Hovey v. Chase, 52 Me. 304.

Plaintiffs can not recover unless it appears that defendants have been guilty of culpable negligence and willfulness in the the care, custody, and handling of their cattle, and that as a result of such negligence and willfulness, plaintiffs' cattle contracted the disease and died therefrom, and it must appear in addition that the plaintiffs have not been guilty of any culpable negligence or willfulness or contributory negligence in caring for and handling their cattle. Shear. & Redf. on Neg., sec. 5; Campbell v. Bear River & A. W. M. Co., 35 Cal. 682, 683; Walker v. Herron, 22 Tex. 60; Wolf v. St. Louis I. W. Co., 10 Cal. 544; Hoffmans v. Tuolumne Water Co., Id. 413; 1 Hilliard on Torts, 67; 2 B. & H. Blackstone, 197; Big. Lead. Cas. on Torts, 197; Shear. & Redf. on Neg., sec. 12; 2 Sedg. on Dam. [7 Ed.] 362, note B, and cases cited.

The common law in regard to keeping of cattle on one's own premises is not the law in this country, and never was applicable to the condition of things here,

especially not in this territory. Morris v. Fracker, 5 Col. 425; Logan v. Gedney, 38 Cal. 581; R. R. Co. v. Finley, 37 Ark. 562; Delaney v. Erickson, 10 Neb. 492; Seeley v. Peters, 5 Gil.(Ill.) 41; Studwell v. Ritch, 14 Conn. 292; Macon R. R. Co. v. Lester, 30 Ga. 540; Headen v. Rust, 39 Ill. 186; Wagner v. Bessell, 3 Iowa, 396; Tonawanda R. R. Co. v. Munger, 49 Am. Dec. 250, and cases cited.

If it appears that the plaintiffs were guilty of culpable negligence, or that their negligence contributed to the injury, they can not recover, whatever may have been the degree of their negligence, and notwithstanding defendants may have been guilty of negligence. Bush v. Brainerd, 1 Cow. 78; Telfor v. Northern R. R. Co., 3 Am. Law Reg. N. S. 665; O'Brien v. Phila. R. R. Co., 6 Id. O. S. 361; Wilds v. Frairrie, 2 Id. N. S. 242; Jacobs v. Duke, 3 Id. O. S. 443; Penn. Canal Co. v. Bently, 10 Id. N. S. 746; Zoebisch v. Tarbell, 5 Id. N. S. 572; Waters v. Wing, 8 Id. N. S. 738; Freer v. Cameron, 55 Am. Dec. 670, and note; 6 Wait's Act. and Dam. 583, and cases cited; 2 Sedg. on Dam. [7 Ed.] 347–349, note 1; Id. 349, 350, 358, note a; 1 Id. 164, 165, note a; Strauss v. The R. R. Co., 75 Mo. 190, 192; Walker v. Herron, 22 Tex. 59, 60.

If it appears that the injury resulted from the negligence of both, though it could not certainly be known whether it was caused at one time or another, or in what particular manner it was occasioned, plaintiffs can not recover; nor can they recover if the fault was mutual. Walker v. Herron, 22 Tex. 61; Bronell v. Flagler, 5 Hill, 283, and cases cited; 2 Greenlf. Ev. [10 Ed.] 473, and cases cited; 2 Rob. Prac. 659, et seq., and cases cited; 6 Am. Law. Reg. O. S. 565.

As to what constitutes negligence, see Tonawanda R. R. Co. v. Munger, 49 Am. Dec. 246; Richardson v. Kier, 34 Cal. 75; Blythe v. Waterworks, 4 Am. Law. Reg. O. S. 572.

If an injury is done on the highway, or in any other place where a party has the right to be, the party complaining of such injury must protect his property. Tillett v. Ward, 22 Am. Law. Reg. N. S. 245, 247, and note; Griffin v. Martin, 7 Barb. 56; White v. Scott, 4 Barb. 56; 1 Thomp. on Neg. 31.

Defendants being lawfully in the highway, or on the public domain, in driving their cattle, would be no more legally liable for their cattle communicating a disease to other cattle, than a person in his own house would be liable for communicating smallpox to his neighbor. Fisher v. Clark, 41 Barb. 239; Broom v. Utica, 2 Barb. 104; Mills v. N. Y. & H. R. R. Co., 2 Robt. 333.

S. B. NEWCOMB and E. C. WADE for appellees.

## STATEMENT.

This is an action of trespass on the case, brought by plaintiffs and appellees against the defendants and appellants in the district court in and for the county of Dona Ana, to recover damages occasioned to plaintiffs' herd of cattle by the communication to them, as alleged, of a certain contagious disease alleged to be commonly called "Texas cattle fever," by defendants' cattle, whereby it is claimed that a large number of cattle died, and a large number of the remainder thereof became sick and were deteriorated in value, and the plaintiffs were compelled to lay out and expend large sums of money for medicines and for nursing and caring for their said cattle, for all of which they claim damage in the sum of $20,000. There are two counts in the declaration—one alleging that the disease was communicated to plaintiffs' cattle in the county of Dona Ana; the other, that the disease was communicated to plaintiffs' cattle in the county of Sierra. In every other respect the two counts are exactly alike. The

declaration, in substance, alleges that at the time of the
grievances complained of the plaintiffs were in the law-
ful, quiet, and peaceable possession of certain lands and
premises in the county of Sierra, to wit, a cattle ranch,
range, and pasture lands, with certain watering places
thereon, suitable for pasturing, grazing, watering, and
raising neat cattle and stock, and which were then and
there free from any contagion or infection, dangerous,
noxious, or fatal to neat cattle or stock; and that they
then had, kept, pastured, and grazed on said lands and
premises a large number of neat cattle, which were
entirely healthy, and free from any contagion or infec-
tion, dangerous, noxious, or fatal to neat cattle; and
that said cattle were especially free from a certain con-
tagious, noxious, dangerous, infectious, and fatal dis-
ease, commonly known as the "Texas cattle fever,"
all of which the said defendants then and there knew.
That the said defendants, while the plaintiffs were in
peaceable possession of, and keeping, pasturing, and
grazing their cattle upon said lands and premises, wrong-
fully, negligently, carelessly, and willfully, contriving
to injure plaintiffs, against the wishes, protests, and re-
monstrances of the plaintiffs, turned in upon, drove,
watered, herded, pastured, and kept on said lands and
premises, and among and with the said neat cattle of
plaintiffs thereon pastured, kept, and grazed, a large
number of other neat cattle to wit; one thousand neat
cattle, sick, diseased, and then and there infected with
a noxious, dangerous, contagious, and fatal disease
commonly known as the "Texas cattle fever." That
said defendants well knew that said neat cattle so
turned in upon, driven, watered, herded, pastured, and
kept upon said lands and premises had shortly be-
fore then been imported and introduced by defendants
into said county from a certain place or district in the
state of Texas infected with said contagious disease
known as the "Texas cattle fever." That said defend-

ants then and there well knew that said cattle were then and there infected with said Texas cattle fever, and had shortly before then been exposed to the infection of Texas cattle fever. That said defendants well knew that said cattle were liable to communicate the said contagious disease to the cattle of the plaintiffs; by reason whereof, and through the carelessness and negligence and willfulness of defendants in the premises, said contagious disease was by the cattle of said defendants communicated to the cattle of said plaintiffs, so that five hundred head of plaintiffs' cattle, of the value of $15,000, became infected, sick, and disordered with said contagious disease; and that four hundred thereof, of the value of $12,000, died thereby; and the rest thereof, to wit, one hundred head, of the value of $3,000, were rendered worthless to plaintiffs in consequence of said disease so communicated to them; and that plaintiffs wholly lost the use and benefit and profit thereof, and were compelled to pay out large sums of money, to wit, $5,000, for medicine, nursing, and care of said cattle so sick and diseased. Wherefore they pray judgment, etc. To which said declaration said defendants pleaded (1) not guilty; (2) a plea traversing all the allegations in the said declaration, upon both of which said pleas issue was joined by said plaintiffs. Said case was tried by the court, a jury being waived by an agreement in writing, at the March term, A. D. 1886, of the district court for the county of Dona Ana. The court found for the plaintiffs generally on the second count of the declaration, refusing to make any special findings, or any findings whatever other than the general finding for plaintiffs on said count, and assessed their damages at $5,200.

OPINION.

LEE, J.—The defendants, in their supplementary brief, submit for our consideration the question: Has this

court authority to review on bill of exceptions questions as to the improper admission or rejection of evidence, WAIVER of jury: finding: appeal. or the ruling of the court below on matters of law, where the case was submitted to the court for trial without the intervention of a jury? And in their brief cite the case of Martinton v. Fairbanks, 112 U. S. 675, 5 Sup. Ct. Rep. 321, in which the court say that prior to the passage of the act of congress of March 3, 1865, "when the case is submitted to the judge to find the facts without the intervention of a jury, he acts as a referee, by consent of the parties, and no bill of exceptions will lie to his reception or rejection of evidence, nor to his judgment on the law;" citing Weems v. George, 13 How. 190, as fully sustaining the proposition. The statute of the territory of New Mexico, in force at the time of the trial, was as follows: "Trial by jury may be waived by the several parties to any issue of fact in the following cases: (1) By suffering default or by failing to appear at the trial; (2) by written consent, in person or by attorney, filed with the clerk. Comp. Laws, N. M., section 2060. By section 4 of act of congress of March 3, 1865, it is provided that parties may submit the issues of fact in civil cases to be tried and determined by the court without the intervention of a jury. The act continues: "The finding of the court upon the facts, which finding shall be general or special, shall have the same effect as the verdict of the jury. The rulings of the court in the progress of the trial, when excepted to at the time, may be reviewed by the supreme court of the United States upon a writ of error or upon appeal, provided the rulings be duly presented by a bill of exceptions. When the finding is special, the review may also extend to the sufficiency of the facts found to support the judgment." Though the act of congress is much more specific and clear as to intent than that of the legislature of this territory, yet, in order to give force and

effect to the act of the legislature, we think the
court may clearly imply the intent of the legislature
to the full extent of the provisions of the act of
congress; and in fact we might have come to the
same conclusion if that act of congress had not been
passed, as was held in Insurance Co. v. Folsom,
18 Wall. 249: "That none of these rules are new, as
they were established by numerous decisions of this
court long before the act of congress in question was
enacted." In this view of the question, we have but
to consider the act of the legislature, in the light of the
decisions of the supreme court of the United States in
construing the act of congress referred to, and to apply
their rulings under it to this case. At the time this
case was tried below, the statutes of New Mexico did
not require the judge in cases tried before him to make
special findings. He could make either special or gen-
eral findings, and in this respect it would be in accord
with the provisions of the act of congress. Under that
act the supreme court held in Insurance Co. v. Folsom,
supra: "Where a jury is waived, and the issues of fact
submitted to the court, the findings could be either
special or general, as in cases where issues of fact are
tried by a jury; but where the finding is general the
parties are concluded by the determination of the court,
except where exceptions are taken to the rulings of the
court in the progress of the trial. Such rulings, if duly
presented by a bill of exceptions, may be reviewed here,
even if the findings are general; but the findings of the
court of the facts can not be reviewed in this court on
a bill of exceptions, or in any other manner, for the
seventh amendment to the constitution of the United
States declares that 'no fact tried by a jury shall be
otherwise reexamined in any court of the United States
than according to the rules of the common law.'" The
only methods known to the common law for the reex-
amination of the facts found by a jury are either by a

new trial granted by the court in which the issues had
been tried or by the award of a venire facias de novo
by the appellate court for some error of law.* And,
having decided to give effect to the act of the legisla-
ture before referred to, we must hold the finding of the
court, where the jury is waived, to be, in effect, the
same as the verdict of a jury. Nothing, therefore, is
open to reexamination in this case except such of the
rulings of the court, made during the progress of the
trial, as are duly presented by the bill of exceptions.
The weight of evidence and the inferences of fact must
be drawn by the court below, as it was the judge of that
court, and not the supreme court, that was substituted,
by the agreement of the parties, in the stead of the jury;
and where a jury is waived, and the case tried by the
court, the bill of exceptions brings up nothing for re-
vision but what it would have brought had there been
a jury trial. Tested by the considerations already
given, and from the fact of the absence of any then ex-
isting statute or rule of law requiring the court to make
special findings, it is clear that the exceptions of the
defendants to the rulings of the court refusing to make
special findings, as requested by their counsel, must be
overruled. This ruling is directly sustained in Clark
v. Fredericks, 105 U. S. 4, where, as here, it was as-
signed as one of the errors, and the court said:  "The
findings are conclusive as to the facts, and they cover
all the issues. Whether the distinct facts set forth in
the requests for findings presented by the plaintiffs in
error were proven or not we need not inquire. As the
court  declined to find them, we must presume they
were not established by the evidence." To the same
effect, see, also, Tioga R'y Co. v. Blossburg & C. R'y
Co., 20 Wall. 143.

This brings us to the consideration of the bill of
exceptions as to exceptions taken to the rulings of the
court, during the progress of the trial, and the errors

assigned thereon. In the motion for a new trial the defendants below set up that the judgment is contrary to, and not sustained by, the evidence in the following particular statement of facts: (1) It is not proven that the plaintiffs' cattle died from a contagious or infectious disease, called "Texas cattle fever," or from any infectious or contagious disease whatever. (2) It is not proven that Texas cattle fever exists, and, if it does exist, that it is a contagious and infectious disease. (3) That if the defendants' cattle, at the time of introducing them into New Mexico, and driving them over the road across the land where plaintiffs' cattle ranged, were possessed of or infected with the Texas cattle fever, or any germ thereof. (The evidence clearly shows that the defendants, prior to and at the time of bringing their Texas cattle, through the plaintiffs' and onto their own range, had no knowledge whatever that said cattle were infected with any contagious or infectious disease known as "Texas cattle fever," or with any disease.) (4) It is not proven that the defendants had any knowledge whatever that the district or section of country from which they drove their cattle in Texas was infected with the Texas cattle fever, or any germ or principle thereof. (5) It is not proven that the district or section of country in Texas where the defendants' cattle were brought from, or any other district or section of country in Texas that may be claimed to be infected with Texas cattle fever, was so infected, and that said cattle were brought from such section or district of country in Texas within a period in which they might directly or indirectly communicate such disease to other cattle. (6) It is proven that the defendants drove their cattle along the public highway, across the land where the plaintiffs were pasturing, and in so doing handled and managed said cattle in as careful, cautious, and prudent a manner as a prudent man would have done in reference to his own

property. (7) It is proven that the defendants, in driving said cattle along said highway, across the land where plaintiffs' cattle ranged, prevented plaintiffs' cattle from mixing or mingling with them, so far as it was possible to do. (8) It is proven that the defendants kept their cattle on their own range, so far as it was possible so to do, using reasonable and ordinary care and caution in so doing. (9) It is proven that the defendants used as much or more care and caution in handling their cattle on their range and keeping them there as it was the custom of the country to use in such cases. (10) It is proven that if the defendants had any knowledge that their cattle were infected with any contagious disease the plaintiffs had equal knowledge of that fact. (11) It is proven that the plaintiffs permitted large bodies of their cattle to range on the range of the defendants after the defendants' cattle were brought there in July, 1884, which cattle went back and forth from plaintiffs' range to defendants' range, and carried with them onto the plaintiffs' range portions of defendants' cattle. (12) It is proven that if defendants' cattle communicated any disease to plaintiffs' cattle it was done either from the road which passed over plaintiffs' range or on defendants' range to plaintiffs' cattle, which grazed upon defendants' range, or by defendants' cattle that drifted down into plaintiffs' range; but it is not possible to determine in which manner it was done, if done at all. (13) It is proven that the road over which the defendants drove their cattle through the plaintiffs' range passes over public land, and the defendants, in driving said cattle, did not pass over any land owned, possessed, or claimed by the plaintiffs. (14) It is proven that the defendants, in driving their said cattle, kept them on the public highway, and did not permit them to scatter any more than was absolutely necessary to do in driving such cattle. (15) That there is no proof that the plaintiffs owned

or possessed or had the right to the possession of any land further than the immediate spots on which their houses and corrals are situated. (16) That there is no legal proof of any title, or claim of title, legal or equitable, or possession, actual or constructive, on the part of the said plaintiffs, of, in, and to any land where the defendants' cattle passed or grazed. (17) That the proofs are indefinite and uncertain as to where the plaintiffs' cattle contracted their disease. (18) That the proofs are indefinite and uncertain as to the disease from which the plaintiffs' cattle died. (19) It is proven that the plaintiffs did not exercise due care and prudence in managing their own cattle, and in permitting said cattle to range on defendants' land.

It appears to have been the theory of the plaintiffs in error that the general findings in the case include both questions of law and of fact, and that by excepting to the general findings they excepted to such conclusions of law as the general findings imply; but we have given to the findings of the court the full effect of a general verdict of a jury. The general verdict of a jury concludes mixed questions of law and fact, except so far as they may have been saved by some exception which may have been taken to the ruling of the court upon some question of law. Norris v. Jackson, 9 Wall. 125; Martinton v. Fairbanks, 112 U. S. 670, 5 Sup. Ct. Rep. 321. It is not the intention or policy of the law in the United States that an appellate court should reverse a case for an error of fact; and the congress of the United States, by a direct provision in the twenty-second section of the judicary act (1 St. at Large, 85), positively prohibits the supreme court of the United States from reversing any case "for error in fact." And, say the supreme court of the United States in Martinton v. Fairbanks, supra: "Upon the issues of fact raised by the pleadings in this case there was a general finding for the plaintiff. The defendant con-

tends that the evidence submitted to the court did not
justify this general finding; but, if the finding depends
upon the weighing of conflicting evidence, it was a
decision on the facts, the revision of which is forbidden
to this court by section 1011, Revised Statutes.   If the
question was whether all the evidence was sufficient in
law to warrant a finding for the plaintiff he should have
presented that question by a request for a definite ruling
upon that point.''   We think, taking all the grounds
set forth in the motion for a new trial, that the atten-
tion of the court was called to the sufficiency of the
evidence in such a manner as to be a direct request for
a definite ruling thereon; and this necessitates an
examination of the evidence in order to determine
whether it is sufficient to support the findings for the
plaintiff, which testimony must be considered in con-
nection with an act of congress which, at the time of
the alleged shipment of the cattle from the state of
Texas to the territory of New Mexico, was enforced, an
extract of which is as follows: ''Sec. 6.   *   *   *   Nor
shall any person, company, or corporation deliver
for such transportation to any railroad company, or
master or owner of any boat or vessel, any live stock,
knowing them to be affected with any contagious,
infectious, or communicable disease; nor shall any per-
son, company, or corporation drive on foot and trans-
port in private conveyance from one state or territory
to another, or from any state into the District of Col-
umbia, or from the district into any state, any live
stock, knowing them to be affected with any contagious,
infectious, or communicable disease and especially the
disease known as 'pleuro-pneumonia:' provided that
the so-called 'splenetic' or 'Texas fever' shall not be
considered a contagious, infectious, or communicable
disease within the meaning of sections four, five, six,
and seven of this act, as to cattle being transported by
rail to market for slaughter, when the same are unloaded

only to be fed and watered in lots on the way thereto."
23 U. S. Stat. at Large, 32, approved May 29, 1884.
The penalty for the violation of the above provision is
a fine of not less that $100 nor more than $5,000, or by
imprisonment for more than one year, or by both fine
and imprisonment. There is no pretension that the
said cattle were being transported for slaughter, or that
they were unloaded only to be fed. If the cattle were
affected with any contagious, infectious, or communi-
cable disease, and the defendants were aware of that
fact at or during the time of the shipment, then such
transportation was in violation of the statute. Con-
gress, by the above act, fully recognizes the existence
of a disease called "splenetic" or "Texas" fever, a
disease of a contagious, infectious, or communicable
character, to which cattle are subject; and in legal
effect the act conveys direct information to the defend-
ants of the existence of the so-called disease. And
whether the cattle shipped by the said defendant from
San Antonio, Texas, to Hatch Station, in New Mexico,
and driven across the plaintiffs' range to that of the
defendants, in said territory, during the month of July,
1884, were infected with a contagious, infectious, or
communicable disease, and, if so infected, whether the
defendants knew, or had any reason to know of such
infection, must be determined from all the evidence
and circumstances in the case.

As is usually the case, the testimony is conflicting
where experts are examined as to matters of professional
opinion; and while such testimony is admissible, it is
not always satisfactory. It is frequently based upon a
theory which is incorrect in its premises, and which,
therefore, must fall when it comes in contact with more
enlightened investigation. For that reason that which
may have been regarded as an established fact one day
may be overthrown and regarded as preposterous at
another. For instance, some creditable historian com-

putes the number of persons executed as witches during the Christian epoch at nine millions; and throughout the middle ages it is doubted if one person could be found who doubted the reality of witchcraft. Though the delusion continued in strong force down to the beginning of the present century, yet to-day a belief in it would be admitted on the question of a person's sanity. Dr. Donalson, an expert witness in the celebrated trial of Mrs. Elizabeth Wharton for the murder, by poisoning, of Gen. W. S. Ketchum, tried at Annapolis, Maryland, in 1872, said: "The medical science is progressive, and we have no security that all the theories now in vogue will not be upset in thirty years." Pamphlet of Trial, p. 58. Yet the uncertainty that may attach to the theories of experts can not impair or do away with the necessity of that class of testimony on questions of science, skill, trade, and the like. Persons conversant with the subject-matter, termed "experts," are permitted to give their opinion in evidence whenever the subject-matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance. Persons that have devoted their lives to the scientific investigation of the subject are better prepared to give an opinion than those persons who have given the subject no investigation; and thus experts are allowed to give an opinion, not on the case in question, unless they have heard all the evidence, but on the state of facts hypothetically stated, and such opinions must of necessity be received as evidence, and it is about the only way facts of a scientific character can be proved. It would not be easy to overrate the value of evidence given in many difficult and delicate inquiries, not only by medical men and physiologists, but by learned and experienced persons in various branches of science, art, and trade. But it is impossible to measure the integrity of every witness, or to deter-

mine the exact amount of skill which a person following a particular science, art, or trade may possess. The court is under the necessity of listening to the testimony of all such persons, and it is sometimes very difficult for the court to determine whether their opinions should be admitted as evidence. Perhaps the rule as established in France would be the better. There experts are officially delegated by the court to inquire into facts and report upon them, and they stand on much higher footing than do either ordinary or scientific witnesses with us."

Objections were made in this case to portions of the testimony of certain witnesses for the reason that EXPERT testimony: discretionary power of court. proper predicate had not been shown as to their skill as experts. What standard of skill they claim should be shown is not set forth, and the standards to be gathered from the adjudicated cases are almost as varied as the cases themselves; and no definite rule, that we can find, is, or, as we think, can be, laid down. Thus it is said in Ardesco Oil Co. v. Gilson, 63 Pa. St. 151: "An 'expert' as the word imports, is one having had experience. No clearly defined rule is to be found in the books as to what constitutes an expert. Much depends upon the nature of the question asked. While undoubtedly it must appear that the witness has enjoyed some means of special knowledge or experience, yet no rule can be laid down, in the nature of things, as to the extent of it." The same court, in Sorg v. First German, etc., Congregation, Id. 161, held: "The preliminary question of fact as to whether a witness is an expert qualified to pronounce an opinion must, in a great measure, be confided to the discretion of the court below trying the case, and we will not reverse either on account of the admission or rejection of such evidence, unless in a clear and strong case." In State v. Wood, 53 N. H. 484, it was held that a physician may testify

as an expert to his opinion formed by reading and study
alone.    Also the same court, in an action for communi-
cating foot-rot to sheep, permitted the editor of a
stock journal, who had read extensively on the subject,
to testify as an expert.    Dole v. Johnson, 50 N. H. 452:
"An expert may testify to general facts which are the
result of general knowledge or scientific skill."    In
Emerson v. Gaslight Company, 6 Allen, 148, and in
Morse v. Crawford, 17 Vt. 499, it was held that a wit-
ness, not a professional man, may give his opinion in
evidence in connection with facts upon which it is
founded, and as derived from them.    The supreme court
of the United States has extended the rule far beyond
a point that we would be willing to have gone, had not
a court of such eminent authority so ruled.    In the
case of Spring Co. v. Edgar, 99 U. S. 645,—a suit for
damages for injuries inflicted on a party from an attack
by a pet deer in a park,—a witness for the plaintiff,
introduced as an expert, testified that he was a dentist,
and resided in Albany; that he was to some extent
acquainted with the habits and nature of the deer, and
had hunted them; that in his opinion the buck deer
are not generally considered as dangerous, but that in
the fall they are more dangerous than at other seasons.
Another expert testified that he was a taxidermist, and
had made natural history a study, and had read the
standard authors in regard to the general characteristics
of deer; that from his reading he was of opinion that
the male deer, after they had attained their growth and
become matured, are dangerous; and that during the
rutting season, from the middle of September to the
middle of December, the buck deer are generally vic-
ious.    The defendant objected to all of the testimony
of the experts, on the ground that the witnesses had
not shown themselves competent as experts, and that
it was improper, immaterial, and incompetent; but the
court overruled the objection, and the defendant

excepted. The supreme court, sustaining the ruling, say: "Whether a witness is shown to be qualified or not as an expert is a preliminary question to be determined, in the first place, by the court; and the rule is that, if the court admits the testimony, then it is for the jury to decide whether any, and, if any, what, weight is to be given to the testimony. Cases arise where it is very much a matter of discretion with the court whether to receive or exclude the evidence; but the appellate court will not reverse in such a case, unless the ruling is manifestly erroneous;" and cities in support thereof Towboat Company v. Starrs, 69 Pa. St. 36; Page v. Parker, 40 N. H. 48; Tucker v. Railroad Company, 118 Mass. 546.

The substantial portion of the experts' testimony objected to is, first, that of Prof. Salmon, professor of veterinary medicine, and for years chief of the United States bureau of animal industry, who testified: "Healthy cattle can not disseminate a contagion of which they are not infected or possessed of; but they may be infected of a contagion, and disseminate and communicate it, though they themselves are insusceptible to its effects, and show no symptoms of the disease; in other words, they may carry contagion without being visibly affected by it. To illustrate this: A person who has been vaccinated may go into a smallpox hospital without contracting the disease, and, coming away, he might carry the contagion, and infect nonvaccinated persons." And also that of Prof. Detmar, a veterinary surgeon, for many years in the employment of the United States in capacity of veterinarian in connection with the agricultural department, whose testimony fully corroborates that of Prof. Salmon. They refer, in illustration of their testimony, to the reports of investigations made by them to the bureau of animal industry while under the employment of the government; and, briefly, their testimony tends to establish the following

facts: (1) That a disease called "splenetic" or
"Texas" fever does exist. (2) That it is caused from
a diseased germ of a parasite of fungus nature, growing
or attached to grasses in tide-water sections of the
southern states. (3) Where these germs grow, or are
reproduced from year to year, are called the "infected
districts." (4) While cattle raised in the permanently
infected districts become inured to the disease, and are
not thereby violently attacked by it themselves, they
nevertheless carry the disease germs in their systems,
and deposit them with their excrement, and thus infect
the trails and pastures over which they pass; and that
this is the only way they communicate or impart the
disease. (5) That cattle from noninfected districts,
sick with the fever, do not impart the disease to other
stock, nor do they infect the lands over which they
graze. (6) Cattle from the infected districts expel the
disease germs in a certain length of time, varying from
seventy to ninety days, after leaving the infected dis-
tricts; and after that they are incapable of infecting
the roads, pastures, or lands over which they pass.
(7) Frost destroys the disease germ, and puts a stop
to its infection. (8) That the greater part of Texas,
including the southern part (from which the defendant's
cattle were shipped), is in the infected district. (9)
The diagnosis of the disease called "splenetic" or
"Texas" fever by the experts would appear to be the
same and identical with that detailed by the witnesses
that attended to and doctored the plaintiffs' sick cattle.
If the showing on the part of the witnesses in the deer
case, above referred to, is all that is required, the ques-
tion is not so much as to who will be allowed to testify
and give their opinions as experts, but rather who will
not be; at any rate, there can be no question of the
correctness of the admission of the testimony of Profs.
Salmon, Detmar, and other experts in the case.

It is contended by the defendants that, even if

such a disease exists, and if the said cattle were infected with it, yet there is no evidence that the defendants had any knowledge of the infection, and there-
Texas fever: fore are not liable. One of the defendants,
evidence. William Hopewell, testified: "I heard of Texas cattle fever. I heard before we brought these cattle from Texas. Heard of a large number of cattle dying on the Memberas river. Heard that Texas cattle fever came from the southern country,"—but added: "I don't believe there is any such thing as Texas cattle fever." There does not appear to have been any lack of knowledge on his part, but he appears to have relied on his disbelief of the existence of such a disease. His opinion in that respect, was immaterial. The statute had recognized the existence of a so-called disease as an infectious and communicable disease, and he was bound to take notice of it, and observe it. Nathan Grayson, another defendant, testified that he had heard of Texas cattle fever; and also that he had a talk with George Lynch, one of the plaintiffs, before the cattle were brought, and that Lynch protested against his unloading his cattle at Hatch Station, for the reason that their (Lynch's) cattle might contract some disease from them. Considering this testimony with that on the part of the plaintiffs in the same connection, this defendant must be regarded as having been fully informed and warned as to the danger of communi-
Liability of de- cating said disease. It would not be re-
fendant under
23 U. S. Stat. quired, on the part of the plaintiffs, to
sec. 6, 1884. prove that the defendants knew as an ab-
solute fact, that their cattle, when being shipped, were carrying the disease germs with them; but, if they were shipping from a locality known to be infected and liable to communicate the disease, they would come under the provisions of the statute before referred to, and it would devolve upon them to take such precautionary steps as would prevent their cattle from communicat-

ing any infectious or communicable disease to other cat-
tle and in such case it would be immaterial where such
disease was communicated, whether it was on the pub-
lic commons or the public roads, or on the lands of the
plaintiffs.   Taking this view of the case disposes of the
principal grounds set forth in the  defendants'  motion
for a new trial, and  makes it possible for this court to
find that the evidence in the case sustains the general
findings of the court below.

The defendant took exceptions to some fifty differ-
ent rulings of the court in the progress of the trial of
the case on the  admission in evidence by the  court of
certain statements or testimony of witnesses, and to
the admission in evidence of certain written documents
on the ground that they were improper, incompetent,
and immaterial.   The rule in cases where
the trial is by the court is entirely differ-
ent from that where the trial is by a jury.

TRIAL by court: admission of incompetent evidence.

Cases are often reversed where improper or incompe-
tent evidence has been admitted before a jury, for the
reason that they may have been misled by it, but such
a reason does not exist where the trial was by the court.
And in a trial by a court "the admission  of  incompe-
tent evidence at a trial below is no cause  for  reversal,
if it could not possibly have prejudiced the other par-
ty."   District of Columbia v. Woodbury, 136 U. S.
450, 10 Sup. Ct. Rep. 990.   Thus it has been held:
The fact that incompetent testimony has been admit-
ted is not sufficient ground for reversing the judgment
where the cause has been tried by the court without a
jury.   "In such case the appellate court will give no
weight to such testimony in the determination of the
appeal, but will not reverse the judgment because it
was admitted." Frisk v. Reigelman, 43 N. W. Rep.
(Wis.) 1119.   Also in the supreme court of California,
(White v. White):  "When the court tries the case this
court never reverses for the admission of irrelevant

evidence, unless it appears that the court in making the decision relied on such irrelevant evidence." 23 Pac. Rep. 284. "A finding of fact in a case at law tried without a jury is conclusive where there is any evidence to found it on, even though the evidence is conflicting. Hathaway v. Bank, 134 U. S. 494, 10 Sup. Ct. Rep. 608; Zanz v. Stover, 2 N. M. 29; Kundinger v. Railway Co., 51 Mich. 185, 16 N. W. Rep. 330. The principle as expressed in the preceding cases is fully recognized and authoritatively established as the law by the supreme court of the United States. In Field v. United States, 9 Pet. 182, it was held that in a cause where the trial by jury had been waived the objection to the admission of evidence was not properly the subject of a bill of exceptions, and the reason given is that, if the evidence was improperly admitted, the court would reject it and proceed to decide the cause as if it were not in the record. And it has been recognized in several subsequent cases. In Arthurs v. Hart, 17 How. 12, speaking of the rule, the court says: "It certainly is so as far as the evidence improperly admitted bears upon a question of fact in the cause; for, when rejected, if there is still any proper evidence tending to support the judgment of the court below, the decision can not be reviewed on a writ of error. The error in this aspect would be unimportant, because not the subject of an exception, the question involved being one of fact. If, upon the rejection of the evidence, no testimony would remain necessary to support the judgment of the court, then the mistake would be one of law, and a proper subject of a writ of error." In this case it does not appear that the court relied on such evidence, and the presumptions are, if any was admitted, it was not considered by the court in making its findings. A different rule would apply where the exceptions were to the rejection of competent and proper testimony; but the exceptions in this case, in

every instance, are to the reception of evidence over objection, and therefore come directly under the rule laid down in the case cited above. Therefore the further examination of these exceptions becomes immaterial. Finding no substantial error sufficient to reverse the case, the judgment of the lower court will be affirmed.

O'BRIEN, SEEDS, and McFIE, JJ., concur.