The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>April 28, 2023</u>

**No. A-1-CA-37758**

**NANCY HENRY,**

     Plaintiff-Appellee/Cross-Appellant,

v.

**NEW MEXICO LIVESTOCK BOARD,**

     Defendant-Appellant/Cross-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alan M. Malott, District Court Judge**

Harrison & Hart, LLC
Nicholas T. Hart
Daniel J. Gallegos
Albuquerque, NM

for Appellee

Long, Komer & Associates, P.A.
Nancy R. Long
Jonas M. Nahoum
Santa Fe, NM

for Appellant

**OPINION**

**YOHALEM, Judge.**

{1}     This case arises under the Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2023).[1] The New Mexico Livestock Board (the Board) appeals the district court's order requiring disclosure of four documents withheld by the Board as exempt from disclosure. The Board contends on appeal that (1) three of the documents ordered disclosed by the district court are subject to attorney-client privilege under Rule 11-503 NMRA (providing for attorney-client privilege in New Mexico), and are, therefore, exempt from disclosure under IPRA, Section 14-2-1(G); and (2) the fourth document ordered disclosed is a report of a disciplinary investigation of a Board employee conducted by the Board, and is, therefore, exempt under IPRA Section 14-2-1(C).

{2}     Plaintiff Nancy Henry cross-appeals from the district court's failure to award per diem statutory damages, under Section 14-2-11(C), for what she contends is the

---

[1]Some sections of IPRA were amended in 2019 and again in 2023, after Plaintiff Nancy Henry's requests for the documents at issue here. The exemption for "matters of opinion in personnel files" was renumbered from Section 14-2-1(A)(3) (2018) to 14-2-1(C); the catch-all exemption "as otherwise provided by law," Section 14-2-1(A)(8) (2018), which included attorney-client privileged documents and is cited by the parties, was replaced with a specific reference to attorney-client privileged information in Section 14-2-1(G). Because the 2019 and 2023 amendments do not impact this appeal, we cite to the current version of IPRA for ease of reference.

failure of the Board to provide a sufficient explanation of its reasons for refusing to disclose the four documents at issue in this appeal.

{3}    After a careful review of the documents at issue, we agree with the Board that all four are exempt from disclosure under IPRA. We, therefore, reverse the district court's order. Concluding that Henry did not adequately preserve the issue of per diem damages under Section 14-2-11(C) for our review, we do not address the merits of Henry's cross-appeal.

**BACKGROUND**

{4}    Henry is a citizen journalist and advocate, whose work focuses on estray and wild horses, matters within the jurisdiction of the Board. Henry testified that she tracks all aspects and final disposition of estray and wild horses. Henry often submits requests to the Board for the disclosure of public records relevant to her work.

{5}    Henry's complaint (*Henry II*) seeking the documents at issue in this appeal, filed in 2017, was consolidated in the district court with another complaint (*Henry I*) previously filed by Henry in December 2016 challenging the Board's failure to respond to eight requests for public records. Although these cases were tried and decided by the district court together, the requests for documents addressed by the district court in *Henry I* are not at issue in this appeal.

{6}    This appeal concerns the following four requests and the single document responsive to each request. IPRA Document No. 1 is an e-mail dated November 8,

2016, between Allison Hedgecock, the Board's general counsel at the time, and Julia White, an attorney in the Office of the Attorney General (OAG). This e-mail is responsive to Henry's IPRA Request No. 1 for communications between certain Board officers and the Board's general counsel and attorneys in the OAG "regarding incarceration of the [nine] wild horses (Budagher herd)." The Board timely responded to the request, stating in its response that the documents sought are subject to attorney-client privilege, and are therefore exempt from disclosure. *See* Rule 11-503; § 14-2-1(G).

{7}    IPRA Document No. 2 is an e-mail dated December 19, 2016, between Ms. Hedgecock and Ari Biernoff, an attorney in the office of the OAG. This e-mail is responsive to Henry's IPRA Request No. 2 for communications between the Board, the OAG, and state-licensed rescues regarding selling the Budagher herd. The Board timely responded to the request, producing documents, which had been sent to or shared with the state-licensed rescues, and stating that the remaining correspondence between the Board's general counsel and attorneys in the OAG were subject to attorney-client privilege, and are therefore exempt from disclosure under Rule 11-503 and IPRA Section 14-2-1(G).

{8}    IPRA Document No. 3 is the report of an investigation of a high-level Board employee dated March 29, 2017, prepared by Robert Caswell Investigations at the request of the Board. This report is responsive to Henry's IPRA Request No. 3 for

records pertaining to a formal investigation of Deputy Board Director Ray Baca and Human Resources Director Priscilla Pena Johnson for allegedly creating a hostile work environment and misappropriating funds. The Board timely responded to the request, stating that the document sought is subject to the exception for matters of opinion in personnel files, under IPRA Section 14-2-1(C).

{9} IPRA Document No. 4 is an e-mail dated January 23, 2017, from Ms. Hedgecock to the Chairman of the Board and twelve Board staff. This e-mail is responsive to Henry's IPRA Request No. 4 for a copy of the e-mail that, according to Henry, advised all of the Board's staff "to have no contact with . . . Henry or Patience O'Dowd," both parties opposing the Board at the time in litigation involving the definition of estray versus wild horses. The Board timely responded, claiming the responsive document is subject to attorney-client privilege, and is therefore exempt from disclosure under Rule 11-503 and IPRA Section 14-2-1(G).

{10} After a bench trial, the district court issued an order directing the Board to produce the documents claimed by the Board to be exempt from disclosure for the court's in camera review. Following its review, the court held that none of the four documents identified in response to IPRA Requests Nos. 1 through 4 were exempt and ordered them disclosed. Concluding that the Board did not act willfully or in bad faith, the district court denied Henry's request for compensatory damages and

4

attorney fees, under Section 14-2-12(D), but allowed her costs as the prevailing party.

{11}    This appeal and cross-appeal followed.

**DISCUSSION**

{12}    IPRA provides that "[e]very person has a right to inspect public records of this state." Section 14-2-1. Our Legislature, however, has adopted a number of exemptions to disclosure under IPRA. These exemptions include attorney-client privileged communications, pursuant to Section 14-2-1(G) and Rules of Evidence 11-503; and "letters or memoranda that are matters of opinion in personnel files," pursuant to Section 14-2-1(C), the exemptions at issue in this appeal.

{13}    The Board contends on appeal that the each of the four documents ordered produced by the district court is exempt from disclosure under IPRA either, for IPRA Document Nos. 1, 2, and 4, pursuant to Section 14-2-1(G) and Rule 11-503, as protected by attorney-client privilege, or, in the case of IPRA Document No. 3, pursuant to Section 14-2-1(C), as a memorandum that is a matter of opinion in a personnel file. We address the claims of attorney-client privilege first, followed by the claim of exemption for IPRA Document No. 3. We then separately address Henry's contention on cross-appeal that the district court erred in failing to award her per diem statutory damages, pursuant to Section 14-2-11(B), for each day the Board failed to adequately explain its reasons for denial of each request.

# I.     Attorney-Client Privilege

{14}    Resolution of this issue requires us to determine whether the district court correctly applied the law governing attorney-client privilege to IPRA Document Nos. 1, 2, and 4. This is a mixed question of law and fact that we review de novo. *See Pacheco v. Hudson*, 2018-NMSC-022, ¶ 24, 415 P.3d 505 (explaining that whether specific communications are subject to a privilege is a mixed question of fact and law that is reviewed de novo on appeal).

{15}    Rule 11-503 governs attorney-client privilege in New Mexico. *See Bhandari v. Artesia Gen. Hosp.*, 2014-NMCA-018, ¶ 11, 317 P.3d 856. Rule 11-503(B) states, in relevant part:

> (B)    A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, a confidential communication made for the purpose of facilitating or providing professional legal services to that client,
>
>        (1)    between the client and the client's lawyer or representative;
>
>        (2)    between the client's lawyer and the lawyer's representative;
>
>        (3)    between the client or client's lawyer and another lawyer representing another in a matter of common interest;
>
>        (4)    between representatives of the client or between the client and a representative of the client; or
>
>        (5)    between lawyers representing the client.

6

Rule 11-503(A)(4) defines a "confidential communication," as that term is used in Subsection B, as a communication "made privately and not intended for further disclosure except to other persons in furtherance of the purpose of the communication."

## A.    IPRA Document No. 1: the November 8, 2016, E-mails Between the Board's General Counsel and the OAG

{16}    IPRA Document No. 1 is an e-mail and a response, both dated November 8, 2016, between the Board's general counsel and a lawyer in the OAG. Henry concedes the Board's general counsel and the lawyer in the OAG were both representing the Board and, therefore, communications between them were "between lawyers representing the [same] client," Rule 11-503(B)(5). Henry argues that the e-mails, nonetheless, are not privileged communications because they involve facts, which Henry distinguishes from "communications for the purpose of facilitating the attorney's rendition of professional legal services to the client," which Henry concedes are privileged under Rule 11-503(B). Henry claims that the attorney-client privilege "should only be applied to protect communications—not facts," and that because the e-mails at issue include facts, the e-mails were neither "confidential communications," as defined by Rule 11-503(A)(4), nor were they made for the purpose of facilitating legal services to the client, as required by Rule 11-503(B). We do not agree.

7

{17} Henry's claimed division of the contents of a single communication into "facts" and "legal advice," where only "legal advice" is protected, misconstrues both the plain language of Rule 11-503 and longstanding precedent construing that rule. The attorney-client privilege protects "communications" between a lawyer and a client, or between the persons listed in Rule 11-503(B)(1-5), so long as the communication—the document, conversation, e-mail, or memorandum—is made for the purpose of facilitating the rendition of professional legal services to the client. "The elements of attorney-client privilege are a communication made in confidence between privileged persons for the purpose of facilitating the attorney's rendition of professional legal services to the client." *Bhandari*, 2014-NMCA-018, ¶ 11 (omissions, internal quotation marks, and citation omitted). The rule is intended to encourage clients to freely disclose information to their attorneys, including the facts about the situation, incident, or circumstances that are the reason for their request for legal advice. *Id.* ¶ 10.

{18} Henry's argument appears to stem from a misunderstanding of case law explaining the principle that facts are not privileged simply because they are communicated to a lawyer by a client. *See S.F. Pac. Gold Corp.*, 2007-NMCA-133, ¶ 13 (stating that "attorney-client privilege protects communications, not facts"); *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts

by those who communicated with the attorney."). These cases hold that facts must be disclosed in response to questioning by interrogatories, depositions, or in testimony at trial. The facts cannot be protected from disclosure simply because they have been included in communications with a lawyer. *See id* at 395. The communications themselves though, even communications concerning facts, are privileged so long as they were made in confidence for the purpose of obtaining legal advice or legal services. *Id.*

{19}     The United States Supreme Court, in *Upjohn Co.* explains the distinction between communications and facts well: "The protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within [their] knowledge merely because [they] incorporated a statement of such fact into [their] communication to [their] attorney." 449 U.S. at 395-96 (alteration, internal quotation marks, and citation omitted).

{20}     Confidentiality protects the client's intent that a communication with a lawyer not be disclosed to third persons, even if that communication concerns facts that are public knowledge. It is the *communication* that the client must intend remain confidential, not the facts mentioned in the communication. So long as an e-mail or other communication is "made privately and not intended for further disclosure

9

except to other persons in furtherance of the purpose of the communication," Rule 11-503(A)(4), that communication is a "confidential communication" protected by the attorney-client privilege. Confidentiality is waived only where the client, the holder of the privilege, "voluntarily discloses or consents to disclosure of any significant part of the . . . communication." Rule 11-511 NMRA.

{21} Our review of the e-mail at issue here reveals that the e-mail clarifies certain information so that the facts can be accurately stated in the complaint the lawyers are jointly preparing for filing in court on the Board's behalf. A draft complaint was attached to the e-mail. Applying these principles of law, the e-mail is a "confidential communication" between "lawyers representing the client," made "for the purpose of facilitating or providing professional legal services to that client." Rule 11-503(B)(5). The fact that the e-mail concerns facts relevant to the legal services being provided does not make it subject to disclosure under IPRA Section 14-2-1(G).

**B.   IPRA Document No. 2: the December 19, 2016, E-mail Between the Board's General Counsel and the OAG**

{22} IPRA Document No. 2 is an e-mail from the Board's general counsel to a lawyer at the OAG asking whether, in light of the status of pending or potential litigation to which the Board is a party, certain actions contemplated by the Board can be taken without legal jeopardy.

{23} As previously stated, "The elements of attorney-client privilege . . . are: (1) a communication (2) made in confidence (3) between privileged persons (4) for the

10

purpose of facilitating the attorney's rendition of professional legal services to the client." *Santa Fe Pac. Gold Corp.*, 2007-NMCA-133, ¶ 14. The sender of the e-mail was the Board's general counsel at the time. The recipient was an OAG attorney who was also representing the Board in preparing a lawsuit for filing. The communication is therefore "between lawyers representing the client," Rule 11-503(B)(5), persons whose communications are privileged. An intent that the e-mail be confidential is indicated by the heading, identifying it as a confidential, protected attorney-client privileged communication. The Board's general counsel sent the e-mail only to the OAG lawyer representing the Board, without copying any other person. Henry does not dispute that IPRA Document No. 2 is a communication between privileged persons or that it was intended to be confidential.

{24} The application of the privilege turns, then, on the final factor—whether the communication was "made for the purpose of facilitating or providing professional legal services to [the Board]," the attorney's common client. Rule 11-503(B). Henry argues that the Board's general counsel was providing information to the OAG involving "the operations of a government agency, not information being shared confidentially to receive legal advice." We do not agree.

{25} Our review of the e-mail at issue in this case shows that the Board's general counsel requested advice on whether the Board should proceed with a proposed course of conduct, the legality of which could be affected by a court ruling or

11

injunction in pending or planned litigation. The Board's planned course of conduct was confidential information being communicated to counsel representing the Board so that that lawyer could provide legal advice as to whether the Board's proposed action had been approved by a court, or if not already entered, when such a ruling might be expected. Such a request for advice on whether a proposed course of action will be in compliance with litigation or potential litigation is exactly the sort of request from an agency for legal advice the privilege protects.[2] *See Upjohn Co.*, 449 U.S. at 394 (providing that the communication of information from government agency employees "needed to supply a basis for legal advice concerning compliance with . . . potential litigation" is privileged). Although we agree that the attorney-client privilege "does not protect communications derived from an attorney giving business advice or acting in some other capacity," that is not what happened here. *See Santa Fe Pac. Gold Corp.*, 2007-NMCA-133, ¶ 23; *see also Bhandari*, 2014-NMCA-018, ¶ 16, (citing *Upjohn Co.*, 449 U.S. at 396 (providing that even though in-house counsel may also benefit from the attorney-client privilege, it must be in situations where legal and not technical advice is at issue)).

---

[2]We do not again address Henry's arguments about the difference between a fact and a communication, or her claim that a communication is not confidential if it includes a publicly known fact, but direct the reader to our previous discussion.

{26} IPRA Document No. 2 is plainly a request for legal advice about the impact of potential or pending litigation on the Board's conduct: exactly the sort of advice the privilege protects.

## C. IPRA Document No. 4: the January 23, 2017, E-mail Sent by the Board's General Counsel to the Chairman of the Board and Twelve Staff Members

{27} IPRA Document No. 4 is an e-mail sent by the Board's general counsel to the Chairman of the Board and twelve members of the Board's staff informing the staff copied on the e-mail that the agency is engaged in litigation, describing in general terms the subject matter of the litigation, and advising staff to refer inquiries from the Board's party-opponents in that litigation to the Board's general counsel.

{28} Two issues are raised on appeal concerning the application of the attorney-client privilege to this document: (1) whether a communication sent by the Board's general counsel to staff members who are not part of the controlling management of the agency qualifies as an attorney-client communication protected by Rule 11-503(A); and, if so, (2) whether the communication was made for the purpose of "facilitating or providing professional legal services to that client," Rule 11-503(B).

{29} We address first whether a communication from in-house counsel to staff members who are not part of high-level management can be an attorney-client privileged communication. Rule 11-503(A)(1) provides that a "client" of an attorney is "a person, public officer, corporation, association, or other entity who consults

13

with, seeks advice from, or retains the professional services of a lawyer or a lawyer's representative." Where a lawyer's client is a corporation or a public agency, there is a question, not answered on the face of the rule, about the individuals who are permitted to speak to counsel on behalf of the client.

{30}   The Board relies on our Rules of Professional Conduct, 16-113 NMRA, comm. cmt. [1] (addressing attorney-client relationships where a corporation, a government agency, or another organization is the client), to argue that "any communications regarding legal advice from the agency's general counsel to the agency's employees and staff are protected from disclosure as an attorney-client privileged communication" Henry disagrees, arguing that the privilege extends to a lawyer's communications with staff members only when the lawyer is assigned by top-level management to investigate wrongdoing. Henry claims that because this e-mail lacks an investigative purpose, it is not protected by the privilege.

{31}   While we do not agree with the Board that the privilege applies to *all communications* between in-house counsel and staff, we also do not agree with Henry that the privilege only applies to communications with staff when counsel is conducting an investigation of wrongdoing.

{32}   New Mexico jurisprudence has not previously addressed the application of the attorney-client privilege to communications with nonmanagement staff within the corporate or public agency context. This issue has been decided, however, by the

United States Supreme Court in its opinion in *Upjohn Co.*, a case that this Court has relied on previously for guidance on attorney-client privilege in the corporate or public agency context. *See Bhandari*, 2014-NMCA-018, ¶ 16 (citing *Upjohn Co.*, 449 U.S. at 396); *see Pub. Serv. Co. of N.M. v. Lyons*, 2000-NMCA-077, ¶ 25, 129 N.M. 487, 10 P.3d 166 (citing *Upjohn Co.*, 449 U.S. at 389).

{33} The United States Supreme Court in *Upjohn* rejected the then-prevalent approach to attorney-client privilege in the corporate context, applying the privilege only to counsel's communications with top-level management. *See* 449 U.S. at 390. Recognizing that the privilege "exists to protect . . . the giving of professional advice to those who can act on it and also the giving of information to the lawyer to enable [the lawyer] to give sound and informed advice," *id.*, the Court adopted a more flexible approach in *Upjohn*. The standard adopted in *Upjohn* applies the attorney-client privilege to protect those communications necessary for an agency's lawyers to (1) collect information from the responsible employees so they can give the agency adequate legal advice, and (2) give legal advice to the employees of the agency who must act on that advice, regardless of the employees' position in the agency hierarchy. *Id.*

{34} We find the approach taken by *Upjohn Co.* to be consistent with the stated purposes of the attorney-client privilege in New Mexico: "'to encourage full and frank communication between attorneys and their clients and thereby promote

15

broader public interests in the observance of law and administration of justice.'" *Lyons*, 2000-NMCA-077, ¶ 25 (quoting *Upjohn Co.*, 449 U.S. at 389). Protecting only a lawyer's communications with top management runs counter to the purpose of the privilege: serving to discourage the full and frank communication of relevant information to the lawyer and of legal advice to the individuals who will apply that advice. *Upjohn Co.*, 449 U.S. at 390.

{35} Having concluded that communications with public agency line staff can sometimes be subject to the attorney-client privilege, we turn to look at the particular document at issue here to see if it qualifies under the *Upjohn Co.* test. The e-mailed memorandum at issue, IPRA Document No. 4, states explicitly that its purpose is to advise staff members who may be contacted and questioned by persons who are opposing litigants in court proceedings to which the Board is a party to refer requests for information to the agency's general counsel for screening and response. The e-mailed memorandum expresses concern that answers given by staff or documents provided to the two named litigants could conflict with the positions taken by the Board in the litigation. This e-mailed memorandum alerting staff to the legal implications of discussions with these two litigants and directing the staff to refer inquiries to legal counsel is plainly intended to facilitate the provision of legal services to the Board in the pending litigation.

{36} Because IPRA Document No. 4 provides legal advice concerning pending litigation to public agency staff members who must act on that advice, it satisfies the requirements of *Upjohn Co.* and Rule 11-503. We note that we do not consider Henry's criticism of the substance of the advice; rather, we merely consider whether the communication constitutes legal advice in furtherance of the provision of legal services to the Board, given to agency staff who are in a position to act on that advice, and intended to be confidential. Concluding that all of these requirements are met, IPRA Document No. 4 is protected by attorney-client privilege.

## II.     Matters of Opinion in a Personnel File

{37} The Board argues on appeal that the district court erred by ordering the disclosure of IPRA Document No. 3, a report of an investigation into alleged misconduct by an employee of the Board prepared for the purpose of determining whether to take disciplinary action against that employee. The Board relies on the IPRA exemption for "matters of opinion in personnel files," Section 14-2-1(C). The Board contends that the investigation report is the type of document found to be exempt from disclosure in our decision in *Cox v. New Mexico Department of Public Safety*, 2010-NMCA-096, ¶ 21, 148 N.M. 934, 242 P.3d 501.

{38} Henry contends in response that the report's content includes "voluminous factual material" and that it, therefore, is not a matter of opinion subject to the Section 14-2-1(C) exemption, and it also does not recommend specific discipline or

give an opinion regarding whether the assistant director should be disciplined, and therefore is not exempted from disclosure by *Cox*, 2010-NMCA-096, ¶ 21. We agree with the Board.

{39}   IPRA Document No. 3 is a report of an investigation by a private agency retained by the Board to investigate allegations that a high-level management employee of the Board committed infractions of the code of conduct governing Board employees. The report consists of detailed accounts of interviews with Board employees, where each employee was asked about their view of the assistant director's work performance and his compliance with the agency's rules of conduct. It concludes with the opinion of the investigators as to whether any of the interviewee's complaints amounted to an infraction subject to discipline.

{40}   In its decision in *Hall v. City of Carlsbad*, ___-NMCA- ___, ¶ 11, ___ P.3d ___ (A-1-CA-37402, March 31, 2023), this Court recently concluded that the IPRA Section 14-2-1(C) exemption applies to documents prepared as part of an employer's investigation of allegations of misconduct by an employee undertaken for the purpose of determining whether to take disciplinary action. *See Cox*, 2010-NMCA-096, ¶ 21. IPRA Document No. 3 meets these criteria, and is consistent with our Supreme Court's conclusion in *State ex rel. Newsome v. Alarid*, that our Legislature intended the "letters or memoranda which are matters of opinion in personnel files" exemption to apply to "documents concerning infractions and disciplinary action."

18

Our Supreme Court recognized that such information was a matter of opinion, not vetted in court, and that it "that might have no foundation in fact but, if released for public view, could be seriously damaging to an employee." 1977-NMSC-076, ¶¶ 8, 12, 90 N.M. 790, 568 P.2d 1236, *superseded by statute as stated in Republican Party of N.M. v. N.M. Tax'n & Revenue Dep't*, ¶ 10, 2012-NMSC-026, 283 P.3d 853.

{41}   We, therefore, reverse the district court's order requiring disclosure of this report.

### III.   Henry's Cross-Appeal Seeking Statutory Per Diem Damages Under IPRA Section 14-2-11(C)

{42}   Henry claims in a cross-appeal that the district court erred in failing to award her statutory per diem damages under Section 14-2-11(C). Section 14-2-11(C)(2) provides that if "[a] custodian . . . does not deliver or mail a written explanation of denial within fifteen days after receipt of a written request for inspection," the district court, in an enforcement action, may award the requestor damages, "not to exceed one hundred dollars ($100) per day." "[A] written explanation of the denial" is defined in Section 14-2-11(B) as a writing including, in addition to an explanation of the denial, a description of the records sought, the names and positions of the persons responsible for the denial.

{43}   Henry argues on cross-appeal that although she received a timely written denial for each of the four requests at issue in this appeal, the explanation provided for the denial failed to comply with Section 14-2-11(B), and that Henry is, therefore,

entitled to statutory per diem damages from the date of each denial until the documents withheld were adequately described and the reasons for the denial explained, pursuant to Section 14-2-11(C).

{44} We first address, and agree with, the Board's claim that Henry failed to preserve this question for appeal. Accordingly, Henry was not entitled to statutory damages under Section 14-2-11(C). Our review of the record shows that Henry never requested statutory damages under Section 14-2-11(C) based on the denial of the four requests at issue in this appeal. Her request for such damages was limited to seven of the requests in *Henry I*, where the Board failed entirely to respond in writing or to offer any explanation of the denial of disclosure. Neither the district court nor the Board had an opportunity to consider or rule upon the argument Henry raises on cross-appeal. *See Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791 ("The primary purposes for the preservation rule are: (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue."). Because this issue was not preserved, we decline to consider it here. *See Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 ("To preserve an issue for review on appeal, it must

appear that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)); *see also Sandoval*, 2009-NMCA-095, ¶ 56 ("In order to preserve an issue for appeal, [an appellant] must have made a timely and specific objection that apprised the district court of the nature of the claimed error and that allows the district court to make an intelligent ruling thereon.").

**{45}** Henry having failed to invoke a ruling of the district court on the grounds argued on cross-appeal, we consider this issue no further.

**CONCLUSION**

**{46}** For the reasons stated above, we reverse the district court's order requiring the four documents at issue on appeal to be disclosed, concluding that all four are exempt from disclosure under IPRA. We remand for entry of judgment in favor of the Board.

**{47}** **IT IS SO ORDERED.**

_____
**JANE B. YOHALEM, Judge**

21

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**JACQUELINE R. MEDINA, Judge**

22