**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: August 29, 2013

Docket No. 31,669 (consolidated with 32,031)

ICEK BENZ a/k/a IKE BENZ
and LAUREN BENZ,

 Plaintiffs-Appellants,

v.

TOWN CENTER LAND, LLC a New Mexico
Limited Liability Company, CENTRAL
MILLENNIUM PARTNERSHIP, a New Mexico
Non-Profit Corporation, CENTRAL CORRIDOR
INVESTORS, LLC, a New Mexico Limited
Liability Company, MARTIN D. BLANC
and DAVID BLANC,

 Defendants-Appellees.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
C. Shannon Bacon, District Judge

Hunt & Davis, P.C.
Catherine F. Davis
Albuquerque, NM

for Appellants

Cadigan Law Firm, P.C.
Michal J. Cadigan
Albuquerque, NM

for Appellees

**OPINION**

**VIGIL, Judge.**

1

**{1}** In settlement of an unrelated dispute, Plaintiff Icek Benz executed a final agreement and release, which discharged "any and all known and unknown claims and causes of action" against Defendant David Blanc. At the trial in this case, Defendants argued, and the district court agreed, that the release included Plaintiffs' claims in the current dispute. Judgment was entered in favor of Defendants and Plaintiffs appeal. We conclude that the language of the release is unambiguous and that the district court erred. We therefore reverse and remand.

## I. BACKGROUND

**{2}** In 2002, Plaintiffs Icek Benz (Benz) and Lauren Benz, and Defendants David Blanc (Blanc), Martin Blanc, Central Millennium Partnership, and Central Corridor Investors, LLC, created Town Center Land, LLC, to acquire, own, operate, and hold for investment property known as the Gas Light Motel. Prior to the creation of Town Center, Benz and Blanc were involved in two other businesses together, Central Market, Ltd., and Baptist Convention Building, LLC. All three businesses were created to acquire, own, operate, and hold specific real estate in Albuquerque, New Mexico for investment.

**{3}** In 2006, Benz notified Blanc that he no longer wanted to be involved in either Central Market, Baptist Convention, or Town Center. In settling the Central Market dispute, Benz received payment and signed the final agreement and release (Release or Central Market Release), which is the subject of this appeal. Benz and Blanc also came to a separate settlement regarding Baptist Convention, which resulted in a second payment and release signed by Benz.

**{4}** This case centers on a dispute involving Town Center. Plaintiffs sued Defendants alleging fraud, misrepresentation, and breach of fiduciary duty, and sought an accounting and dissolution of Town Center. Following discovery and entry of a pretrial order, the case was set for a nonjury trial. At trial, Plaintiffs objected to admission of the Release into evidence. In part, Plaintiffs argued that the Central Market Release was not relevant to the Town Center dispute before the court and that neither the pleadings nor the pretrial order set forth an affirmative defense of release. Over Plaintiffs' objection, the Release was admitted into evidence. Extrinsic evidence was also admitted about the meaning of the Release, which the district court ultimately refused to consider.

**{5}** Following trial, the district court found, and concluded in pertinent part, that "[o]n June 16, 2006, Benz executed [the Central Market R]elease, releasing Blanc and other released parties . . . 'from any and all known and unknown claims and causes of action of every nature, character and description which Benz has or may have against the released parties'" and that "[b]y signing the [Central Market] Release, Benz released all the claims he later raised in [the Town Center] matter, except for the request for dissolution of Town Center." The district court entered judgment in favor of Defendants and, in a separate order, awarded Defendants' attorney fees.

2

**{6}**     Plaintiffs separately appealed from the judgment of the district court and the order for Defendants' attorney fees, and we have consolidated the appeals. Additional pertinent facts are discussed below.

## II.     DISCUSSION

**{7}**     Plaintiffs argue that the district court erred by (1) admitting the Central Market Release into evidence and amending the pretrial order to include Defendants' release defense; and (2) concluding that the Central Market Release barred Plaintiffs' claims relating to Town Center. Plaintiffs further contend that the district court erred in failing to dissolve Town Center and awarding Defendants' attorney fees. Because we reverse the district court's conclusion that the Central Market Release released Plaintiffs' claims in the Town Center dispute, we do not address these additional arguments regarding dissolution of the LLC and Defendants' attorney fees.

### A.     Admission of the Central Market Release Into Evidence and Amendment of the Pleadings

**{8}**     We first examine Plaintiffs' arguments regarding admissibility of the Release into evidence and amendment of the pleadings to include Defendants' release defense. Specifically, Plaintiffs argue that the district court erred in (1) admitting the Release into evidence despite its untimely disclosure by Defendants; (2) amending the pleadings to include a release defense; and (3) allowing Defendants to present their release defense when they did not affirmatively plead the defense prior to trial. These arguments arise under the following circumstances.

**{9}**     Defendants waited until the weekend before trial to identify the Central Market Release as a trial exhibit. In response, Plaintiffs made an oral motion in limine prior to the start of trial to exclude it from evidence. Plaintiffs argued that the Release had not been disclosed as a potential exhibit, Defendants' release argument was not pled as an affirmative defense, and the Release only related to Central Market, an entity unrelated to the Town Center dispute being tried. Defense counsel admitted to the late disclosure, stating that he only recently realized that it was a general release, and he further contended that a release is not an affirmative defense that must be pled pursuant to Rule 1-012 NMRA. Finally, counsel argued that the late disclosure did not result in unfair surprise or prejudice because Plaintiffs were aware of the Release prior to trial. The district court denied Plaintiffs' motion to exclude and permitted Defendants to admit the Release into evidence because, although "[Defendants' counsel] didn't disclose his intention to use the exhibit until very late in the game, it's not a situation where the exhibit had not been produced or wasn't known to the parties." The district court requested that Plaintiffs renew their objections when the Release was offered into evidence to see "if there's any other reasons or concerns for its exclusion."

**{10}**     Defendants offered the Release into evidence during Blanc's testimony and Plaintiffs

renewed their objections that Defendants had failed to assert the release defense in their answer or the pretrial order and that the Central Market Release was irrelevant to the Town Center dispute. The district court admitted the Release into evidence as well as testimony concerning its meaning. By entering judgment against Plaintiffs based on the Central Market Release, the district court effectively amended the pleadings to include Defendants' release defense.

**{11}** This is a close case, but we conclude that the district court did not abuse its discretion by admitting the Central Market Release into evidence or amending the pleadings to include Defendants' release defense. "We review the admission of evidence for an abuse of discretion." *State v. Branch*, 2010-NMSC-042, ¶ 9, 148 N.M. 601, 241 P.3d 602, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110. Similarly, the decision to modify the pretrial order rests within the sound discretion of the district court. *Fahrbach v. Diamond Shamrock, Inc.*, 1996-NMSC-063, ¶ 25, 122 N.M. 543, 928 P.2d 269. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153.

**{12}** Here, Defendants had nearly two years after Plaintiffs produced the Release to disclose their intent to use it as evidence and a defense, yet they waited until the weekend prior to the start of trial to notify Plaintiffs of their intentions. As the district court observed in denying Plaintiffs' motion in limine, "[this was] not a situation where the exhibit had not been produced or wasn't known to the parties[.]"

**{13}** Further, Plaintiffs fail to demonstrate how the decision of the district court was prejudicial to them. *See Blacker v. U-Haul Co. of N.M., Inc.*, 1992-NMCA-001, ¶ 10, 113 N.M. 542, 828 P.2d 975 ("Generalized allegations of prejudice are not sufficient to establish an abuse of discretion on the part of the trial court." (internal quotation marks and citation omitted)). On the day of trial, Plaintiffs' counsel stated that admission of the Release would "prejudice[] my client . . . in having to present that evidence and having that particular issue come up when it's never been raised before." However, Plaintiffs had ample opportunity to present evidence on the Release and questioned both Benz and Blanc about their intentions concerning it. Plaintiffs also acknowledged at oral argument before this Court that there was no evidence related to the Release that they were unable to present. In addition, Plaintiffs did not ask for a continuance following the decision of the district court to allow Defendants to present evidence on the Release. *See* Rule 1-015(B) NMRA ("The court may grant a continuance to enable the objecting party to meet such evidence.").

**{14}** Despite Defendants' untimely disclosure, the high deference afforded to the decision by the district court under the appropriate standard of review and the lack of prejudice compels us to conclude that there was no abuse of discretion by the district court. Thus, we find no error in the decision of the district court to admit the Central Market Release or to amend the pleadings to include Defendants' release defense. The foregoing discussion also answers Plaintiffs' argument that Defendants waived the release defense argument by failing

4

to affirmatively plead it as a defense. *See Lewis v. Samson*, 1999-NMCA-145, ¶ 26, 128 N.M. 269, 992 P.2d 282 ("The pretrial order is 'the law of the case.'"), *overruled on other grounds by Lewis ex rel. Lewis v. Samson*, 2001-NMSC-035, 131 N.M. 317, 35 P.3d 972.

**B.      Application of the Central Market Release to the Town Center Dispute**

**{15}**     Plaintiffs' central contention on appeal is that the district court erred in interpreting the Central Market Release to bar Plaintiffs' claims related to Town Center. Specifically, Plaintiffs challenge the district court's determination that the Central Market Release unambiguously discharged liability of Defendants not named in the Release and that the unambiguous language of the Central Market Release bars Plaintiffs' Town Center claims. Defendants respond that Plaintiffs failed to preserve their argument about the unnamed Defendants and then contend that the district court properly determined that the Central Market Release is unambiguous and that the language on its face bars all claims brought by Plaintiffs in this case. Resolution of these issues also requires us to examine the relevant facts.

**{16}**     When Benz notified Blanc that he no longer wished to be involved in Central Market, Baptist Convention, or Town Center, he made three demands:  (1) immediate payment of $60,870 for the remaining interest on his initial promissory note investment in Central Market; (2) Blanc's purchase of Benz's interest in both Baptist Convention and Town Center or sale of the real estate to a third party and termination of these LLCs; and (3) access to "all the books and records" of Baptist Convention and Town Center to allow a "certified public accountant to examine and audit the financial records of the[se] two LLCs, and to determine the actual membership interests in the LLCs and the underlying real estate."

**{17}**     Two weeks later, Blanc responded to Benz's request for payment on the promissory note with a counteroffer labeled "Re: Central Market, Ltd. Promissory Note of 10/31/98[.]" Blanc offered $34,200 to settle the debt on the promissory note, but did not address Benz's other demands regarding Baptist Convention or Town Center.

**{18}**     That same month, Benz signed the Central Market Release resolving that dispute. The Central Market Release states:

> In consideration of [past payments] and the receipt of $34,200, Icek Benz, a married man ("Benz"), for and on behalf of himself and his heirs, successors and assigns, acknowledges receipt of payment in full of all amounts due and owing under the Promissory Note dated October 31, 1998 in the original amount of $554,600 and hereby fully releases and discharges Central Market, Ltd., a New Mexico corporation ("Central Market") and David W. Blanc ("Blanc"), and their predecessors and successors in interest, heirs, agents, employees, officers, directors, partners and assigns, (collectively "the released parties") from any and all known and unknown claims and causes of action of every nature, character and description which

Benz has or may have against the released parties, including claims arising out of the prior or present construction, development, financing, refinancing, management, leasing, ownership or operation of the real estate re-development project known as "Central Market" and located at 301-307 Central Ave., N.W., Albuquerque, New Mexico (the "Project"), or any representations which were or may have been made to Benz at any time concerning the Project, including all claims which Benz has or may have in the future.

Benz further agrees that he has no interest, as lender, owner or otherwise in the Project or in Central Market, Ltd., or Central Market, LLC.

The released parties have made no warranties, representations, promises or statements to Benz regarding the Project.

**{19}** At trial, Plaintiffs' counsel asked Benz and Blanc about their intentions concerning the Central Market Release and whether they understood it to apply to the Town Center dispute. Defendants' counsel objected, arguing that because the language of the Release is clear, the testimony was irrelevant. The district court overruled Defendants' objections, stating that the testimony by Benz and Blanc concerning their intentions was fair, "because I think [the R]elease is subject to interpretation" and that "[q]uestions about the ultimate [meaning] of the [Central Market Release] and how I am to interpret [it], whether we're looking at the four corners, extrinsic evidence, things of that nature are all going to be arguments of Counsel."

**{20}** Benz then testified that "I was releasing Central Market" and that it was never his "understanding that [he was] releasing claims other than Central Market[.]" Blanc in turn testified that "Central Market, Limited was included in that release" and that "[i]t had to do with everything, but I don't know—I didn't know at that time, in 2006, that there was going to be a lawsuit by Mr. Benz or anybody else." Defendants' counsel asked Blanc "[i]s that the release by which you resolved the dispute involving Central Market, among other things?" and Blanc responded, "Yes, but it was later." Blanc also acknowledged that he did not believe his counsel had raised the Central Market Release during settlement of the subsequent Baptist Convention dispute.

**{21}** Following trial, the district court found that "[b]y signing the [Central Market] Release, Benz released all the claims he later raised in this matter, except for the request for dissolution of Town Center." The district court stated that, in coming to this conclusion, it had determined "[t]he release language is not ambiguous and therefore parole evidence regarding the Release is not admissible."

**{22}** Having examined the relevant facts, we now address Defendants' preservation argument and Plaintiffs' contentions about the district court's interpretation of the Central Market Release.

**1.    Preservation**

**{23}**    Under the language of the Central Market Release, Benz fully released "Central Market, Ltd., a New Mexico corporation ('Central Market') and David W. Blanc ('Blanc'), and their predecessors and successors in interest, heirs, agents, employees, officers, directors, partners and assigns[.]"    After the district court filed its findings of fact and conclusions of law that the Release barred all of Plaintiffs' claims, Plaintiffs filed supplemental requested findings of fact and conclusions of law as well as a motion to amend the findings of fact and conclusions of law of the district court.    Plaintiffs moved that the district court find and conclude "[t]he [Central Market] Release . . . does not mention Town Center Land LLC, Central Millennium Partnership ('Central Millennium'), Central Corridor Investors LLC ('Central Corridor'), or Martin Blanc by name and does not release those entities from the claims raised in this lawsuit."    The district court denied Plaintiffs' motion. On appeal, Plaintiffs contend the district court erred in concluding that the Central Market Release also released Plaintiffs' claims against Town Center, Central Millennium, and Central Corridor in this case.[1]    The basis for Plaintiffs' contention is that none of these parties are named in the language of the Release.

**{24}**    Defendants argue that Plaintiffs failed to preserve their argument by not challenging application of the Central Market Release to Town Center, Central Millennium, and Central Corridor until after the district court had entered its post-trial findings and conclusions.    "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court."    *Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717.

**{25}**    In support of their contention, Defendants cite to *Gutierrez v. City of Albuquerque*, 1995-NMCA-139, ¶¶ 5-7, 121 N.M. 172, 909 P.2d 732, *rev'd on other grounds by* 1998-NMSC-027, 125 N.M. 643, 964 P.2d 807.    In *Gutierrez*, we held that an employer had not preserved its argument that a worker's benefits claim was barred by a release signed by the worker in settlement of an earlier dispute because "[t]he [employer] did not argue this point at trial or invoke a ruling from the judge on this issue until it filed its requested findings of fact and conclusions of law."    1995-NMCA-139, ¶ 6.    We determined that "[b]ecause the issue of whether the release would bar relief against the [employer] is one that raises factual issues concerning the intent of the parties, we believe that the [employer] acted too late in first raising the issue after the trial was over and the evidence closed."    *Id*. (citation omitted).

---

[1] Plaintiffs also challenge the application of the Central Market Release to Lauren Benz and Martin Blanc.    While we agree that Plaintiffs failed to preserve the argument for appellate review, Lauren Benz's claims are identical to those of Benz, to which Defendants make no preservation challenge.    As such, this conclusion has no effect on the resolution of the case.    Similarly, we do not address Plaintiffs' argument concerning application of the Release to Martin Blanc because the parties agree that no tort claims were brought against him and that he is named only due to his membership in Town Center.

7

In particular, we noted that "[t]he [employer] did not introduce specific evidence on this issue, apart from introducing the release as an exhibit at trial." *Id.*

**{26}**   We are unconvinced that *Gutierrez* is applicable here.  Unlike *Gutierrez*, the issue of the scope of the Central Market Release appears to have been before the district court. The district court here specifically stated that "[t]he arguments raised by Plaintiffs [in their supplemental requested findings of fact and conclusions of law] were already considered and implicitly rejected at trial and in the [district c]ourt's original Findings and Conclusions." Thus, we conclude that Plaintiffs preserved their argument concerning the unnamed corporate defendants.

## 2.        Interpretation of the Central Market Release

**{27}**   Concluding that Plaintiffs' arguments are preserved, we now turn to the district court's interpretation of the Release.  Because releases are contractual in nature, they are governed by contract law.  *McNeill v. Rice Eng'g & Operating, Inc.*, 2003-NMCA-078, ¶ 13, 133 N.M. 804, 70 P.3d 794.  "[O]ur primary objective in construing its terms is to give effect to the intent of the parties." *Hansen v. Ford Motor Co.*, 1995-NMSC-044, ¶ 32, 120 N.M. 203, 900 P.2d 952.

**{28}**   Prior to 1991, contract interpretation in New Mexico subscribed to the four-corners or plain meaning standard. *Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 10, 114 N.M. 778, 845. P.2d 1232.  The four-corners standard restricts courts solely to considering the words of the contract to determine if the language is ambiguous.  *See C.R. Anthony Co. v. Loretto Mall Partners*, 1991-NMSC-070, ¶ 13, 112 N.M. 504, 817 P.2d 238 ("Ambiguity is determined by the court without the admission of evidence of surrounding circumstances to explain the purposes and context of the contract."); 5 Margaret N. Kniffin, *Corbin on Contracts* § 24.7, at 33 (rev. ed. 1998) ("Courts that subscribe to the 'plain meaning rule' hold that if a 'clear, unambiguous' meaning is discernible in the language of the contract, no extrinsic evidence of surrounding circumstances may be admitted to challenge this interpretation.  The decision as to whether ambiguity exists must be made without reference to any source other than the contract itself.").  Only after a preliminary determination that the language on its face was ambiguous could a court consider extrinsic evidence to "aid in interpreting the parties' expressions." *C.R. Anthony*, 1991-NMSC-070, ¶ 12.

**{29}**   Our Supreme Court abandoned the four-corners standard in recognition of "the difficulty of ascribing meaning and content to terms and expressions in the absence of contextual understanding[.]" *Id.* ¶ 14; *see* Kniffin, *supra*, at 30 ("There is in fact no 'one correct' meaning of a word or expression; and the party choosing the expression, or the party assenting to its use, may not even have attached a clear meaning to it, or the two parties may have attached different meanings.").  In its place, our Supreme Court established that "in determining whether a term or expression to which the parties have agreed [to] is unclear, a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance." *C.R. Anthony*,

1991-NMSC-070, ¶ 15 (footnote omitted); *see Mark V*, 1993-NMSC-001, ¶ 12 ("The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear."). "The court is no longer restricted to the bare words of the agreement in interpreting the intent of the parties to a contract, but may also consider the context in which the agreement was made to determine whether the party's words are ambiguous." *Mark V*, 1993-NMSC-001, ¶ 11. This determination of "whether an agreement contains an ambiguity is a matter of law to be decided by the trial court." *Id.* ¶ 12.

**{30}** If the extrinsic evidence presented to the court for consideration on a question of ambiguity is "so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law." *Id.*; *see Montoya v. Villa Linda Mall, Ltd.*, 1990-NMSC-053, ¶ 8, 110 N.M. 128, 793 P.2d 258 ("It is black letter law that, absent an ambiguity, a court is bound to interpret and enforce a contract's clear language and cannot create a new agreement for the parties."). However, "[i]f the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists." *Mark V*, 1993-NMSC-001, ¶ 12. "Ambiguity . . . is best understood as a proxy for describing lack of clarity in the parties' expressions of mutual assent. The term, as it has been employed, incorporates a variety of conceptual problems including the distinctive notions of ambiguous syntax, ambiguous terms, vagueness, and general lack of clarity." *C.R. Anthony*, 1991-NMSC-070, ¶ 15 n.2. If the contract presents an ambiguity, the fact finder may interpret the contract other than as indicated by the language if extrinsic evidence establishes that the parties intended the ambiguous language to have an alternative meaning. *See Mark V*, 1993-NMSC-001, ¶ 13 ("In order to determine the meaning of the ambiguous terms, the fact finder may consider extrinsic evidence of the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent.").

**{31}** "We review a district court's interpretation of an unambiguous contract de novo." *Smith & Marrs, Inc. v. Osborn*, 2008-NMCA-043, ¶ 10, 143 N.M. 684, 180 P.3d 1183 (internal quotation marks and citation omitted). "[W]e view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions." *Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 19, 131 N.M. 100, 33 P.3d 651. "The purpose, meaning and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive." *ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 23, 299 P.3d 844 (internal quotation marks and citation omitted). "When discerning the purpose, meaning, and intent of the parties to a contract, the court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties." *CC Hous. Corp. v. Ryder Truck Rental, Inc.*, 1987-NMSC-117, ¶ 6, 106 N.M. 577, 746 P.2d 1109.

**{32}** We determine that no evidence exists to conclude that the Central Market Release applies or was intended to apply to the unnamed corporate defendants in the Town Center

dispute, and we conclude as well, that as to this issue, the Central Market Release is unambiguous. "[A] general release raises a rebuttable presumption that only those persons specifically designated by name or by some other specific identifying terminology are discharged." *Hansen*, 1995-NMSC-044, ¶ 33. "In the absence of such specific terminology, the person seeking to be discharged must prove by extrinsic evidence that the parties to the agreement actually intended to discharge him or her from liability." *Id.* Here, neither Town Center, Central Millennium, nor Central Corridor is designated by name as a released party. Nor are the corporate defendants designated under the language identifying the released parties as Central Market, Blanc, and "their predecessors and successors in interest, heirs, agents, employees, officers, directors, partners and assigns."

**{33}**    Without specific terminology identifying the corporate defendants, Defendants had the burden to establish through extrinsic evidence that Benz and Blanc intended to discharge the corporate defendants from liability in the Release. *See id.* (holding that "[i]n the absence of such specific terminology, the person seeking to be discharged must prove by extrinsic evidence that the parties to the agreement actually intended to discharge him or her from liability"). Defendants fail to meet their burden. There is no extrinsic evidence in the record to support Defendants' argument that Benz and Blanc intended for the Central Market Release to release the corporate defendants from liability in the Town Center dispute. Nor is there evidence to support Defendants' argument that the parties understood that Blanc was acting pursuant to his role as an employee, owner, agent, and/or servant of Town Center, Central Millennium, or Central Corridor when Benz signed the Release. Consequently, we conclude that Defendants failed to demonstrate that Blanc and Benz intended the Central Market Release to discharge Town Center, Central Millennium, and Central Corridor from liability on Benz's claims related to Town Center. Because the district court determined otherwise in entering judgment against Plaintiffs, we reverse and remand with regard to their claims against the corporate defendants.

**{34}**    We further determine that no evidence exists to conclude that the Central Market Release applies or was intended to apply to Benz's claims against Blanc in the Town Center dispute, and we conclude as well, that to this issue, the Central Market Release is unambiguous. The words of the Release and the extrinsic evidence presented in detail above establish that there is only one reasonable construction of the language at issue: it is an agreement whereby Benz relinquished his interest in Central Market and any claims he had or may have in the future in exchange for payment of the remaining balance on the Central Market promissory note. Neither the words, extrinsic evidence, nor the arguments of the parties establish that the language, including the reference to "any and all known and unknown claims," is ambiguous. *See C.R. Anthony*, 1991-NMSC-070, ¶ 21 (finding that the language of a real property lease was not ambiguous because the extrinsic evidence did not "reveal any ambiguity in the sense that the terms . . . [might] be understood to be vague, uncertain, or reasonably susceptible to more than one interpretation"); *cf. McNeill*, 2003-NMCA-078, ¶ 21 (finding a release to be ambiguous because it "is susceptible to two reasonable but inconsistent interpretations . . . . [and] reasonable jurors could find either interpretation correct").

**{35}** Applying the foregoing principles of contract interpretation, we conclude that the Central Market Release did not discharge Blanc from liability in the Town Center dispute. The district court focused on the language "from any and all known and unknown claims and causes of action of every nature, character and description which Benz has or may have against the released parties" as determinative in its interpretation. However, immediately following the section quoted by the district court is language relating solely to Central Market: "including claims arising out of the prior or present construction, development, financing, refinancing, management, leasing, ownership or operation of the real estate re-development project known as 'Central Market' and located at 301-307 Central Ave., N.W., Albuquerque, New Mexico (the 'Project')[.]" We are not convinced, as Defendants argue, that the word "including" established that the Central Market Release served to encompass Benz's claims regarding both Central Market and Town Center. Rather than modifying the phrase "any and all claims" to include unnamed disputes, we conclude that the language serves to include any claims relating to unnamed aspects of the Central Market project and dispute. *See State v. Foulenfont*, 1995-NMCA-028, ¶ 9, 119 N.M. 788, 895 P.2d 1329 (discussing *ejusdem generis* which "requir[es] that where general words follow an enumeration of persons or things of a particular and specific meaning, the general words are not construed in their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned" (internal quotation marks and citation omitted)). We also note that each subsequent clause in the Release is limited by a similar reference to Central Market. *Cf. Medina v. Holguin*, 2008-NMCA-161, ¶ 14, 145 N.M. 303, 197 P.3d 1085 (discussing *noscitur a sociis* which establishes that "a court must look to the neighboring words in a statute to construe contextual meaning").

**{36}** Thus, we conclude that the district court erred in interpreting the Central Market Release to bar Benz's claims in the Town Center dispute. The Central Market Release makes no reference to Town Center, Plaintiffs' monetary contribution to Town Center, Plaintiffs' interest in Town Center, or Town Center, Central Millennium, Central Corridor, Martin Blanc, and Lauren Benz as parties to this action. Despite Defendants' contention to the contrary, language that the Central Market Release purports to include "any and all known and unknown claims" alone is insufficient to establish that it was the intent of Benz and Blanc to release Blanc of liability in the Town Center dispute. *See Lujan v. Healthsouth Rehab. Corp.*, 1995-NMSC-057, ¶¶ 20, 25, 28, 120 N.M. 422, 902 P.2d 1025 (holding that release language purporting to release "any and all other persons . . . who together with [the other driver] may be . . . liable . . . for damages . . . arising out of an accident" is "simply insufficient to alert [the plaintiff] that [the other driver] was bargaining for the release of [the hospital] in addition to her own release" and that "it is incumbent on [a] releasee [who is bargaining for the release of another] to make this intention very clear in the language of the release" (first alteration in original) (emphasis and internal quotation marks omitted)). For the foregoing reasons, we conclude that the district court erred in interpreting the Central Market Release to bar Benz's claims in the instant matter.

## III. CONCLUSION

**{37}** The judgment of the district court is reversed and the case is remanded for proceedings consistent with this Opinion.

**{38}   IT IS SO ORDERED.**

                                    _____

                                    **MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**TIMOTHY L. GARCIA, Judge**