This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40804**

**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF THE FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF4, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-FF4,**

       Plaintiff-Appellee,

v.

**HOUSTON ROSS,**

       Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Joshua A. Allison, District Court Judge**

Murr Siler & Accomazzo, P.C.
James P. Eckels
Denver, CO

Stephanie L. Schaeffer
Albuquerque, NM

for Appellee

Houston Ross
Albuquerque, NM

Pro Se Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}**     Defendant Houston Ross, an attorney acting pro se, appeals the district court's final order (the Final Order) and other interim orders relating to a foreclosure action against him initiated by Plaintiff Deutsche Bank National Trust Company (Deutsche Bank or the Bank). In his appeal, Defendant argues, among other things, that the district court violated his due process rights by entering the Final Order and challenges the district court's various denials of several of his motions for partial summary judgment that preceded the Final Order. For the reasons set forth below, we affirm.

**BACKGROUND**

**{2}**     In 2005, Defendant obtained a mortgage from a bank unrelated to this case in the amount of $592,000 to purchase the now foreclosed property underlying this appeal. The accompanying borrower's note (the Note) was executed by Defendant and originally indorsed to the same, unrelated bank. Through a series of assignments occurring on or before May 2009, Deutsche Bank obtained possession of the Note as well as the right to enforce the mortgage against Defendant. Defendant subsequently defaulted on the mortgage, and Deutsche Bank filed for foreclosure pursuant to the terms and conditions of the loan. In 2014, while the foreclosure action was pending, Deutsche Bank transferred servicing of the mortgage to its agent, Specialize Loan Servicing, LLC (SLS), which then took over responsibility for accepting mortgage payments on behalf of Deutsche Bank.

**{3}**     In April 2014, SLS sent Defendant a letter inviting him to apply for a federal mortgage assistance program known as the Home Affordable Modification Program (HAMP). HAMP provides borrowers who have struggled to make payments on their mortgage with various mechanisms that may make repayment of the loan more manageable. Defendant responded to SLS's offer in June 2014 by submitting to SLS an application to determine his eligibility for loan modification under HAMP. SLS thereafter sent Defendant a letter dated July 31, 2014 (the Trial Period Plan or TPP), notifying Defendant that he was deemed eligible for loan modification and that, for his loan to be permanently modified, he had to make three trial period payments on time and return all required documents. The TPP stated that trial payments were due on or before the first of September, October, and November 2014. Defendant submitted all three of these payments to SLS on time. The TPP did not, however, specifically identify the documents Defendant was required to return, nor their return date, but it did state that, "[o]nce we confirm you are eligible for [HAMP] and you make all of your trial period payments on time, we will send you a modification agreement detailing the terms of the modified loan."

**{4}**     After Defendant submitted the last trial payment, SLS sent Defendant two letters dated November 10, 2014—one apparently by mistake—each stating that Defendant had been approved for permanent loan modification, and to accept the terms of the new mortgage Defendant needed to sign and return the enclosed modification agreement by a date provided in the letter. One letter—the one Deutsche Bank asserts is the correct version—states that Defendant was to sign and return the agreement by November 30, 2014. The other—the one containing the allegedly erroneous deadline—states that

Defendant was to sign and return the enclosed agreement by January 31, 2015. Defendant asserts that he only received the letter containing the January 31, 2015, deadline and relied on that date when returning the signed modification agreement to SLS. To that end, Defendant signed and submitted the modification agreement to SLS on January 30, 2015.

{5}     SLS on the other hand, acting in reliance on the November 30, 2014, deadline for return of the signed modification agreement, sent Defendant a letter dated January 5, 2015, advising Defendant that his loan modification application had been denied due to his failure to return the agreement on time. SLS maintains that, in the months that followed its January denial of Defendant's application and in an attempt to resolve any confusion, it sent him two new modification offers, in February and June 2015, neither of which were responded to by Defendant. Defendant denies receiving either of the new offers. On September 16, 2015, SLS mailed a final decision letter to Defendant stating that his request for a mortgage modification had been denied and was considered withdrawn. Defendant thereafter amended his answer in the instant foreclosure action, advancing several counterclaims stemming from the above dispute regarding his HAMP application. In relevant part, Defendant's counterclaims include: (1) alleged violations of the Unfair Practices Act (UPA), NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2019); and (2) breach of the implied covenant of good faith and fair dealing.

{6}     Throughout the pendency of this case, Defendant has never disputed his default on the mortgage. Indeed, rather than address the merits of the foreclosure action against him, Defendant advanced his case by filing numerous motions to the district court seeking either dismissal of Deutsche Bank's claims or partial summary judgment in his favor regarding his counterclaims, all of which were based on his denied HAMP application. With each motion for partial summary judgment, Defendant addressed only one of his counterclaims at a time. Ultimately, however, Deutsche Bank filed two motions for summary judgment, the resolution of which prompted Defendant to file the instant appeal. First, after Defendant's fourth motion for partial summary judgment, Deutsche Bank sought summary judgment regarding all of Defendant's counterclaims at once. Second, the Bank filed for summary judgment against Defendant regarding, among other things, foreclosure of the mortgage at issue in this case.

{7}     In separate orders, the district court found for Deutsche Bank regarding both motions. As to Defendant's counterclaims, the district court stated that, "[w]hile [Defendant] attempts to raise disputed issues of fact, the record shows that the *material* facts are not in dispute" and it, therefore, granted Deutsche Bank's motion for summary judgment regarding all of Defendant's counterclaims. Regarding Deutsche Bank's motion for foreclosure, the district court found in its Final Order that the Bank had established a "*prima facie* case for collection of the amounts due on the Note, and foreclosure of the [m]ortgage to recover the amounts due on the same." The court noted that Defendant did not dispute his default on the loan; he did not contest that he failed to cure his default on such loan; and he did not raise any material factual disputes regarding Deutsche Bank's prima facie case for foreclosure.

**{8}** Defendant appeals three of the district court's orders related to the above procedural background. First, he appeals two separate orders from the district court in which it either entered summary judgment against Defendant's counterclaims or struck one of Defendant's motions for partial summary judgment from the record. Next, Defendant appeals the district court's Final Order—and its denial of his related motion to reconsider—entering judgment against Defendant and ordering foreclosure of his mortgage. For the reasons set forth below, we affirm.

## DISCUSSION

### Defendant's Counterclaims

**{9}** Defendant first argues that the district court erred in granting Deutsche Banks's motion for summary judgment as to his counterclaims regarding alleged violations of the UPA and breach of the implied covenant of good faith and fair dealing. He asserts that genuine issues of material fact exist regarding these claims and that summary judgment is, therefore, improper. Second, Defendant argues that the district court erred in striking from the record his second motion for summary judgment in which he alleges that Deutsche Bank breached its contract with him regarding his HAMP application. In its relevant order, the district court found that Defendant had failed to include in his amended answer a specific count for breach of contract and ordered his motion for summary judgment alleging such a breach to be stricken from the record. Defendant argues on appeal that "notice pleading cases [do not] require that the claim be identified by name only [and] that the general allegations [are] sufficient to give 'fair notice' of the claim." We address each of Defendant's arguments in turn, beginning with those related to entry of summary judgment against his counterclaims regarding the UPA and the implied covenant of good faith and fair dealing.

### Standard of Review

**{10}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). "We review issues of law de novo." *Id.* "The movant need only make a prima facie showing that [they are] entitled to summary judgment. Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citation omitted). "[T]he party opposing summary judgment has the burden to demonstrate the existence of specific evidentiary facts which would require trial on the merits. A party may not simply argue that such evidentiary facts might exist, nor may it rest upon the allegations of the complaint." *Horne v. Los Alamos Nat'l Sec., L.L.C.*, 2013-NMSC-004, ¶ 15, 296 P.3d 478 (alteration, internal quotation marks, and citations omitted).

### Defendant's UPA Claim

**{11}** The core of Defendant's claim that Deutsche Bank violated the UPA rests on his contention that the deadline to return the signed modification agreement to SLS was January 31, 2015, and not November 30, 2014, as SLS asserts. Defendant maintains that the TPP offered to him by SLS created a binding promise that, upon Defendant's submission of the trial payments and return of the signed modification agreement by January 31, 2015, Deutsche Bank would permanently modify his loan. Defendant argues that he complied with the terms of the TPP by making the three monthly payments on time and that he submitted the signed agreement to SLS on January 30, 2015, a day before what he thought was the deadline. He concludes that SLS's issuance of two letters, one of which contained an erroneous deadline, and the subsequent denial of his HAMP application after he complied with the later deadline, constitute, in the least, a dispute regarding a genuine issue of material fact that SLS violated the UPA.

**{12}** Deutsche Bank, on the other hand, argues that Defendant's claim was properly dismissed as a matter of law because, even if January 31, 2015, was the correct deadline—an assertion against which it has produced countervailing evidence— Defendant has not produced any evidence indicating that Deutsche Bank knowingly made a false statement that mislead Defendant, a requirement for violation of the UPA. *See Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 5, 142 N.M. 437, 166 P.3d 1091 ("The gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services." (internal quotation marks and citation omitted)). "The 'knowingly made' requirement is met if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 17, 112 N.M. 97, 811 P.2d 1308 (internal quotation marks and citation omitted). Nonetheless, there is a distinction between false statements negligently made and those made knowingly, and the former is not a sufficient basis to maintain a claim alleging violations of the UPA. *See Robey v. Parnell*, 2017-NMCA-038, ¶¶ 47-51, 392 P.3d 642. "A negligent misrepresentation is made when a party fails to exercise reasonable care or competence in communicating information," and is inadequate to support a claim under the UPA. *Id.* ¶ 48.

**{13}** Here, the district court granted Deutsche Bank's motion for summary judgment on Defendant's UPA counterclaim, finding that "the undisputed material facts show that [Defendant] cannot prevail." We agree. Defendant has identified no admissible evidence that Deutsche Bank (or its agent, SLS) knew or should have known that the statement regarding the January 31, 2015, deadline was false or misleading at the time it sent the TPP letters. Instead, Defendant alleges that SLS should have known the statement regarding the November 30, 2014, return deadline was false "since reasonable diligence would have turned up the November 10, 2014, letter with the January 31, 2015, return date." However, even if true, such an assertion has no bearing on whether SLS knowingly made a false statement *at the time* it sent Defendant either letter, as required under the UPA. *See id.* Based on the record before us and the circumstances of this case, SLS's acts of sending two letters with different return deadlines seems, at

most, to be a negligent misrepresentation in that it "fail[ed] to exercise reasonable care or competence in communicating information." *Id.* Thus, Defendant has failed to demonstrate a material issue of fact regarding an essential element of his UPA claim, and we conclude the district court properly dismissed his claim. *See id.* ¶ 51.

**{14}**　The dissent argues that the mere existence of the two letters, sent on the same day with conflicting deadlines for submission of the modification agreement, "are prima facie evidence of Deutsche Bank's actual or constructive knowledge that one of the letters contained a false or misleading [statement]." *Dissent* ¶ 37. The dissent further urges that whether such a false or misleading statement was made knowingly or negligently is a question of fact for the jury, and, therefore, Defendant's UPA counterclaim should not have been decided on summary judgment. *Dissent* ¶ 38. Our decision, however, rests on Defendant's failure to adduce any evidence regarding Deutsche Bank's knowledge that one of the deadlines was a false statement. *See Atherton v. Gopin*, 2015-NMCA-003, ¶ 47, 340 P.3d 630 ("'[K]nowingly made' is an integral part of all UPA claims and . . . it must be the subject of actual proof.). "[T]he party opposing summary judgment has the burden to demonstrate the existence of specific evidentiary facts which would require trial on the merits. A party may not simply argue that such evidentiary facts might exist, nor may it rest upon the allegations of the complaint." *Horne*, 2013-NMSC-004, ¶ 15 (alteration, internal quotation marks, and citations omitted).

**{15}**　Here, Defendant has produced no evidence to support his UPA claim other than *one* of the two letters at issue. The record is utterly absent any evidence relating to Deutsche Bank's knowledge that it made a false statement at the time it was made, and we will not infer that the mere existence of contradictory statements satisfies the knowing standard contained in the UPA. In short, while the dissent urges us to conclude that the presence of two contradictory letters is sufficient to establish at least a material fact regarding violation of the UPA, we do not consider the letters by themselves to demonstrate anything further than mere negligence on the part of Deutsche Bank. Moreover, absent any evidence that the letter containing the mistaken deadline, whichever it may be, was made knowingly, Defendant cannot prevail on his counterclaim, and the district court properly dismissed such claim as a matter of law.

**{16}**　To the extent that Defendant argues SLS's subsequent denial of his modification agreement was also a false statement "knowingly made"—because SLS should have investigated the confusion after Defendant alerted SLS of the error—we remain unpersuaded. Defendant himself admits that SLS did conduct an investigation into the matter and, as Defendant repeatedly stated in his filings to the district court, "at some point it was determined that there was a mistake in the November 10, 2014, cover letter; the January 31, 2015, date was incorrect." Indeed, after denying Defendant's first application for loan modification under HAMP and in attempting to address any confusion that remained, SLS "rebuilt" two separate modification offers and sent them to Defendant as separate offers in 2015. Defendant, however, never responded to either offer and contends he never received them.

**{17}** Defendant's arguments merely amount, at most, to an implication that Deutsche Bank should have discovered an error regarding the return deadline for his application *after* the offers were made. Defendant has not pointed us to any evidence that Deutsche Bank knowingly made a false statement at the time it was made, and we therefore conclude Defendant's counterclaim alleging unfair trade practices fails as a matter of law and affirm the district court on this ground. *See Stevenson*, 1991-NMSC-051, ¶ 17.

**Defendant's Claim Regarding the Covenant of Good Faith and Fair Dealing**

**{18}** Defendant's assertion that Deutsche Bank violated the covenant of good faith and fair dealing is premised on the same factual dispute regarding the correct return date for the modification agreement sent to him on November 10, 2014. Similar to his argument regarding the UPA, Defendant claims that SLS's denial of his HAMP application after he complied with the January 31, 2015, deadline to return the signed modification agreement constitutes a breach of the implied covenant of good faith and fair dealing. Defendant, relying on *Wigod v. Wells Faro Bank, N.A.*, 673 F.3d 547, 566 (7th Cir. 2012), argues that the TPP was a valid offer and that his compliance with its terms (requiring timely submission of both the trial payments and the modification agreement) created a binding contract pursuant to which SLS was required to permanently modify his mortgage.

**{19}** While we question whether a binding contract to modify Defendant's mortgage was created in the first instance, due to both parties' admission that a mutual mistake arose regarding the deadline to return the signed agreement, *see* Restatement (Second) of Contracts. §§ 152, 155 (1981) (discussing mutual mistake in contract formation), the dispositive issue here is whether Deutsche Bank denied Defendant's application for HAMP relief in bad faith or engaged in wrongful and intentional conduct by its denial. *See Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040, ¶ 7, 144 N.M. 449, 188 P.3d 1200 (stating that breach of the implied covenant of good faith and fair dealing "requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." (internal quotation marks and citation omitted)). The covenant "protects only against bad faith—wrongful and intentional affronts to the other party's rights, or at least affronts where the breaching party is consciously aware of, and proceeds with deliberate disregard for, the potential of harm to the other party." *Paiz v. State Farm Fire & Cas. Co.*, 1994-NMSC-079, ¶ 31, 118 N.M. 203, 880 P.2d 300 (footnote omitted). "The covenant has never, to our knowledge, been extended to protect against negligent conduct—no matter how grossly so." *Id.*

**{20}** Here, Defendant argues that Deutsche Bank denied his HAMP application in bad faith because it sought to "eva[de] the spirit of the bargain." We are unpersuaded. Deutsche Bank's denial of the application was premised on Defendant's failure to return the signed modification agreement by November 30, 2014—a deadline whose veracity is supported by evidence proffered by Deutsche Bank. As we noted above, Defendant himself has admitted that SLS at some point determined a mistake had been made

regarding the January, 31, 2015, deadline, and Deutsche Bank has since provided evidence that it twice sought to offer Defendant new modification agreements to remedy the mistake. Defendant has thus failed to offer admissible evidence demonstrating that either Deutsche Bank or SLS made "wrongful and intentional affronts" to Defendant's rights under their contract, even if such a contract existed. *See Paiz*, 1994-NMSC-079, ¶ 31 (footnote omitted). Assuming without deciding that Deutsche Bank's TPP letter containing the January 31, 2015, deadline did constitute a valid offer to permanently modify Defendant's mortgage, Defendant's allegations against Deutsche Bank merely amount to, at most, negligent conduct by the Bank, not bad faith. To reiterate, the covenant of good faith and fair dealing does not serve to rectify merely negligent conduct. *Id.* We, therefore, affirm the district court as to its entry of summary judgment against Defendant on this ground.

**Defendant's Counterclaim Regarding Breach of Contract**

**{21}**　Defendant next challenges the district court's order striking from the record his second motion for summary judgment, in which he alleged breach of contract. The district court ruled that Defendant failed to adequately plead a breach of contract counterclaim in his amended answer and that, through his motion for summary judgment, Defendant "seeks to rely on principles of notice pleading and substantial justice to effectively rewind the case to May 2018 (when he filed his Second Motion to Amend) to include a *Count* for breach of contract." The district court therefore granted Deutsche Bank's motion to strike Defendant's motion for summary judgment from the record.

**{22}**　Defendant subsequently moved the district court to reconsider its order, arguing that, under Rule 1-012(E) NMRA, Deutsche Bank had an obligation to seek a more definite statement regarding Defendant's counterclaims before filing a responsive pleading. The district court denied the motion to reconsider, reasoning that "it was not [Deutsche Bank's] obligation to attempt to discern from [Defendant's] counterclaims what other possible 'counts' [Defendant] might be attempting to plead." Defendant now appeals both the order striking his motion and the order denying his motion to reconsider.

**{23}**　"We review the district court's decision to grant a motion to strike for abuse of discretion." *Gallegos v. Nev. Gen. Ins. Co.*, 2011-NMCA-004, ¶ 8, 149 N.M. 364, 248 P.3d 912. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 11, 314 P.3d 688 (internal quotation marks and citation omitted). We similarly review the denial of a motion to reconsider for abuse of discretion. *See Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶ 35, 148 N.M. 627, 241 P.3d 628.

**{24}**　On appeal, Defendant argues that while his amended answer did not include a specific count alleging breach of contract, it "alleged all the elements of a breach of contract claim" and "that those elements were more than sufficient to satisfy the

requirements of notice pleading." Defendant continues that notice pleading "does [not] require that the claim be identified by name" and that "general allegations [are] sufficient to give 'fair notice' of the claim." While it is true that "notice pleading does not require that every theory be denominated in the pleadings," each claim must be "set forth with sufficient detail so that the parties and the court will have a fair idea of the action about which the party is complaining and can see the basis for the relief [sought]." *Schmitz v. Smentowski*, 1990-NMSC-002, ¶ 9, 109 N.M. 386, 785 P.2d 726.

**{25}**   Here, in the district court's order, it quoted defense counsel's statement from a hearing on Defendant's motion to amend his answer that Defendant sought "permission to clean up the counterclaims themselves, to make clear what the claims are *and what the causes of action under those claims are.*" Defense counsel elaborated that "the version of the counterclaim attached to the [f]irst [m]otion to [a]mend implied certain causes of action, but it doesn't clearly state those, it merely states facts." The district court then granted Defendant leave to amend his answer, specifically directing Defendant to "identify what the claim is" in his subsequent filing. Less than ten days later, in May 2018, Defendant filed his amended answer, asserting five specific counterclaims, none of which alleged breach of contract. Defendant filed his motion for summary judgment regarding breach of contract almost four years later, in March 2022.

**{26}**   Defendant's amended answer contains a section titled, "General Allegations" followed by five different sections alleging specific counterclaims. While the general allegations section contains several statements regarding the elements of a contract, such as Defendant's acceptance of SLS's TPP offer, alleged consideration supporting the offer, and that Deutsche Bank "breached the modification agreement," none of the subsequent counterclaims advance a theory that Deutsche Bank breached any specific contract with Defendant. Indeed, the statements contained in the "General Allegations" section relate to different purported agreements between Defendant and Deutsche Bank and do not cognizably support a claim for breach of a specific contract. Thus, Defendant's allegations are too vague to provide meaningful notice regarding a specific breach of contract claim and fail to satisfy our notice pleading requirements. "[G]eneral allegations of conduct are sufficient, *as long as* they show that the party is entitled to relief." *Schmitz*, 1990-NMSC-002, ¶ 9 (emphasis added).

**{27}**   To reiterate, "[a]n abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz*, 2013-NMCA-111, ¶ 11 (internal quotation marks and citation omitted). Here, given the context surrounding the district court's decision to grant Defendant leave to amend his answer, defense counsel's statements that Defendant needed to clarify which counterclaims were being made, and the district court's directive for Defendant to specifically "identify what the claim is," we cannot say that the district court abused its discretion in striking Defendant's second motion for summary judgment. Defendant amended his answer to include five specific causes of action, none of which alleged breach of contract. Moreover, his amended answer does not clearly support a claim that any one contract, if one was ever created, was breached. Defendant then allowed the case to proceed for nearly four years before he sought summary judgment regarding

breach of contract. Under these facts, the district court did not abuse its discretion in striking Defendant's motion.

**{28}** We similarly conclude that the district court did not abuse its discretion in denying Defendant's motion to reconsider its order. As we stated above, Defendant argued in his motion to reconsider that Deutsche Bank was obligated to ask for a more definitive statement regarding his counterclaims before filing a responsive motion. Rule 1-012(E) provides that "if a pleading . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, [they] may move for a more definite statement before interposing [their] responsive pleading." We first note that, on its plain language, the rule does not require a motion for a more definite statement regarding claims not specifically presented in a pleading, as Defendant seems to suggest it does. *See id.* Moreover, the district court correctly observed that Rule 1-012(E) does not make it Deutsche Bank's responsibility to "discern from [Defendant's] counterclaims what other possible 'counts' [Defendant] might be attempting to plead." Thus, we conclude that the district court did not abuse its discretion in denying Defendant's motion to reconsider its order striking his second motion for summary judgment.

### Order Granting Foreclosure

**{29}** Lastly, Defendant challenges the district court's Final Order granting summary judgment in favor of Deutsche Bank regarding its foreclosure claim against him. We understand Defendant to argue that the district court violated his due process rights by entering the Final Order despite Defendant refusing to sign the Final Order as to its form, a requirement Defendant asserts is mandatory under either Rule 1-058 or LR2-125(C), (D) NMRA. Defendant also appeals the district court's denial of his motion to reconsider its Final Order in which he again challenged the court's dismissal of his counterclaims. On appeal, Defendant argues that there remain disputed issues of fact regarding his counterclaims and that summary judgment is improper. For reasons set forth below, we affirm the district court as to both entry of its Final Order and its denial of Defendant's motion to reconsider. Regarding the Final Order, we review entry of summary judgment de novo and reiterate that once the movant makes a prima facie showing that he is entitled to summary judgment, "the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Lopes*, 2014-NMCA-097, ¶ 6 (internal quotation marks and citation omitted).

**{30}** As we stated above, Defendant does not challenge the merits of Deutsche Bank's foreclosure claim. Rather, he vaguely asserts that "the mandatory protections provided to all parties before the entry of a final judgment or order were not afforded to [Defendant] in this case." The thrust of Defendant's argument seems to be that the district court wrongfully denied him an opportunity to submit his own version of a proposed order, instead limiting him to merely approving or disapproving the form of Deutsche Bank's proposed order. Defendant, however, has not pointed us to anything in the record that demonstrates the district court limited Defendant's ability to file his own form of judgment or that it otherwise violated the procedure set forth in either Rule

1-058 or LR2-125. As the district court's order denying his motion to reconsider states, Defendant had "ample time to submit his own form of judgment but did not do so." "The presumption upon review favors the correctness of the trial court's actions. Appellant must affirmatively demonstrate [their] assertion of error." *Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063.

{31}     Moreover, having reviewed the briefs of both parties, the motions and arguments presented to the district court, and the procedure regarding entry of judgment against Defendant, we conclude that the district court adhered to both Rule 1-058 and LR2-125. Deutsche Bank submitted its proposed judgment, a six-page order, to Defendant four days before the proposed judgment had to be submitted to the district court; Defendant refused to sign it; the Bank submitted the proposed judgment to the district court and requested a hearing on the matter despite its belief that one was not necessary; the district court waited an additional thirteen days before entering the judgment; and at no point during this time did Defendant submit his own proposed judgment to the district court or request a hearing. All of these steps conform with the procedure set forth in both Rule 1-058 and LR2-125, and we discern no error that could constitute a basis for reversal.

{32}     Defendant similarly fails to identify any basis for reversal of the district court's denial of his motion to reconsider the Final Order. Both in his motion and in his briefing to this Court, Defendant again attempts to identify issues of fact that preclude summary judgment as to his counterclaims regarding the UPA and the implied covenant of good faith and fair dealing. However, the district court properly noted that Defendant's motion "does not raise any new factual or legal issues" that had not yet been addressed. "This Court has held that a district court does not abuse its discretion in denying a motion for reconsideration that was merely a restatement of the arguments the defendant[] had already advanced." *Unified Contractor, Inc. v. Albuquerque Hous. Auth.*, 2017-NMCA-060, ¶ 77, 400 P.3d 290 (alteration, internal quotation marks, and citation omitted). We, therefore, conclude the district court's denial of Defendant's motion to reconsider was properly entered.

**CONCLUSION**

{33}     For the reasons set forth, we affirm.

{34}    **IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MEGAN P. DUFFY, Judge, concurring in part and dissenting in part**

**DUFFY, Judge (concurring in part and dissenting in part).**

**{35}** I concur in the majority opinion with the exception of the decision to affirm the district court's grant of Deutsche Bank's motion for summary judgment on Defendant's UPA counterclaim. The majority opinion concludes that (1) Defendant did not identify any admissible evidence to establish that Deutsche Bank knew or should have known that the January 31, 2015, deadline was false or misleading at the time, and (2) Deutsche Bank's "mistake" with regard to the deadline was merely negligent, which is inadequate to support a claim under the UPA. I disagree with both conclusions. The letters themselves, which were attached to the parties' motions, are sufficient to establish a question of material fact regarding Deutsche Bank's knowledge, and whether Deutsche Bank's misrepresentation was negligently or knowingly made is a question for the jury.

**{36}** Defendant's UPA claim centers on the fact that SLS sent him two letters on the same date containing different deadlines for Defendant to return the signed modification agreement: one letter told Defendant that the modification agreement must be returned by November 30, 2014, and the other told Defendant the modification agreement must be returned by January 31, 2015. Defendant claims he only received the letter containing the January 31, 2015, deadline. It is undisputed that Defendant complied with the January 31, 2015, deadline, but SLS refused to complete the modification because, according to Deutsche Bank, November 30, 2014, was the "correct" deadline.

**{37}** Deutsche Bank argued that Defendant did not present any evidence regarding Deutsche Bank's "knowledge or intent" at the time SLS sent the letters. As an initial matter, "the misrepresentation need not be intentionally made" to satisfy the "knowingly made" requirement under the UPA. *Stevenson*, 1991-NMSC-051, ¶ 15. Instead, the requirement is met if the "party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Id.* ¶ 17. In this case, the letters themselves, sent on the same day with conflicting deadlines for Defendant's response, are prima facie evidence of Deutsche Bank's actual or constructive knowledge that one of the letters contained a false or misleading deadline at the time it was sent. Under the general rule of agency, Deutsche Bank is presumed to have knowledge of the contents of the letters sent by its agent, SLS. *See* Restatement (Second) of Agency §§ 268, 272 (1958). What is more, in all of the pages written about this issue in the record below and on appeal, Deutsche Bank has never argued that it lacked actual or constructive knowledge of the contents of the letters when they were sent. It simply argues that the deadline set out in the letter Defendant received was a "mistake"—an argument that suggests Deutsche Bank or SLS did not *intend* to include that deadline in the letter. But, as *Stevenson* made clear, the misrepresentation need not be intentionally made, and Deutsche Bank's intent does not negate its knowledge.

**{38}** Second, I am troubled by the majority opinion's decision to quantify the false or misleading statement as "at most . . . a negligent misrepresentation." *Maj. op.* ¶ 12. To the extent there is a principled distinction to be made between a negligent

misrepresentation and a "knowingly made" misrepresentation under the UPA, it is for a jury to determine where this particular false or misleading statement falls on the spectrum of fault. *See Robey*, 2017-NMCA-038, ¶¶ 48-51 (concluding that the "knowingly" standard under the UPA is higher than the negligence standard). Indeed, as the majority opinion appears to recognize, the district court's decision rests on an "implicit finding" that one of the return dates was a mistake and not a "knowingly made" misrepresentation. That alone requires reversal under the well-settled principle that "in resolving the question as to whether summary judgment should be granted, the trial court does not weigh the evidence." *Wheeler v. Bd. of Cnty. Comm'rs of San Juan Cnty.*, 1964-NMSC-081, ¶ 22, 74 N.M. 165, 391 P.2d 664; *see Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 22, 135 N.M. 539, 91 P.3d 58 ("A court reviewing a summary judgment motion may not weigh the evidence or pass on the credibility of the witnesses. In its review, the court must resolve all reasonable inferences in favor of the nonmovant and must view the pleadings, affidavits, depositions, answers to interrogatories and admissions in a light most favorable to a trial on the merits." (internal quotation marks and citations omitted)).

**{39}** Finally, though *Robey* is a precedential opinion of this Court, I have concerns about its rationale for distinguishing between a negligent misrepresentation and a false or misleading statement under the UPA. *See Robey*, 2017-NMCA-038, ¶¶ 47-51. In particular, I am not persuaded that the UPA's "knowingly" standard is higher than ordinary negligence. *See id.* ¶ 51. Our Supreme Court recognized in *Stevenson* that the UPA's "knowingly made" requirement is satisfied if the party knew or should have known that the statement was false or misleading. 1991-NMSC-051, ¶ 17. "Knew or should have known" is an ordinary negligence standard. *See, e.g., F & T Co. v. Woods*, 1979-NMSC-030, ¶ 10, 92 N.M. 697, 594 P.2d 745; *see also State v. Consaul*, 2014-NMSC-030, ¶ 39, 332 P.3d 850 (holding that the "knew or should have known" standard is an ordinary civil negligence standard that should not be used in criminal jury instructions); *Hermosillo v. Leadingham*, 2000-NMCA-096, ¶ 19 , 129 N.M. 721, 13 P.3d 79 ("To establish a claim for injuries caused by the negligent entrustment of an automobile, the plaintiff must show that the defendant entrusted his automobile to another whom the defendant knew or should have known was an incompetent driver, and whose incompetence caused the plaintiff's injuries."). Consequently, *Robey*'s holding that the UPA standard is different from, and higher than, an ordinary negligence standard is, in my view, incongruent with settled law.

**{40}** In point of fact, while the standards for negligent misrepresentations and UPA volitions are phrased somewhat differently, they are not materially different. As *Robey* notes, "A negligent misrepresentation is made where a party fails to exercise reasonable care or competence in communicating information." 2017-NMCA-038, ¶ 48; *see also* UJI 13-1632 NMRA (stating that "[a] negligent misrepresentation is one where the speaker has no reasonable ground for believing that the statement made was true"). A UPA violation is also predicated on a failure to exercise reasonable care and is satisfied if a party "*in the exercise of reasonable diligence should have been aware* that the statement was false or misleading." *Stevenson*, 1991-NMSC-051, ¶ 17 (emphasis added). It stands to reason that the same failure to exercise ordinary care might qualify

as both a negligent misrepresentation and a UPA violation—a party with no reasonable belief that a statement was true can reasonably be said to have actual or constructive knowledge that the statement was false. For that reason, I cannot agree with the conclusion in *Robey* and the majority opinion in this case that a negligent misrepresentation "is inadequate to support a claim under the UPA" as a matter of law. *Maj. op.* ¶ 12.

**{41}** Rather than distinguishing a negligent misrepresentation from a UPA violation based on differing standards of reasonable care, as *Robey* does, I believe the distinction lies in the reliance element. Specifically, a negligent misrepresentation requires detrimental reliance—that the party making the untrue statement intended the other party to rely on it and the other party did in fact rely on it. *See* UJI 13-1632. The UPA does not. *See Smoot v. Physicians Life Ins. Co.*, 2004-NMCA-027, ¶¶ 2, 19-23, 135 N.M. 265, 87 P.3d 545 (stating that detrimental reliance is not an essential element of a UPA claim).

**{42}** For all of these reasons, I respectfully dissent from the majority opinion's resolution of Defendant's UPA counterclaim and would have remanded the matter to the district court for trial on the merits.

**MEGAN P. DUFFY, Judge**